### EL PASO ELECTRIC RY. CO. v. LEE.
### (No. 203.)

(Court of Civil Appeals of Texas. El Paso.
May 27, 1920. Rehearing Denied
June 29, 1920.)

1. **Master and servant ⬥289(19)—Knowledge by lineman jury question.**

In electric lineman's action for injuries from shock, whether plaintiff knew that the wires with which he was working were charged *held* for jury.

2. **Trial ⬥295(6)—Instruction not erroneous, in view of whole charge, as suggesting circumstance shown not to exist.**

In an electric lineman's action for injuries, instruction that defendant's foreman informed plaintiff lineman that certain wires were not charged with electricity *held* not erroneous, in view of the whole charge and in connection with the issues raised by the evidence, as suggesting the existence of a circumstance which the proof showed did not exist.

3. **Trial ⬥194(19), 240—Charges properly refused as on weight of evidence and argumentative.**

In a lineman's action for injuries from shock, special charges requested by defendant *held* properly refused as argumentative and on the weight of the evidence.

4. **Trial ⬥260(1)—Refusal of charges otherwise covered not reversible error.**

The refusal of requested charges whose subject-matter was sufficiently presented in the main charge presents no reversible error.

5. **New trial ⬥52—Grant on account of quotient verdict discretionary.**

The statute vests discretion in the trial judge in the matter of granting new trial on account of a quotient verdict having been returned.

6. **Trial ⬥315—Quotient used merely as working basis for verdict not reversible error.**

When there was no agreement beforehand to adopt a quotient as the verdict, and it was to be used and was used merely as a working basis to reach the amount of verdict, no reversible error is shown.

Appeal from District Court, El Paso County; J. R. Harper, Judge.

Action by J. D. Lee against the El Paso Electric Railway Company. From judgment for plaintiff, defendant appeals. Affirmed.

Davis, Goggin & Loftus, of El Paso, for appellant.

W. B. Ware and Patterson & Wallace, all of El Paso, for appellee.

HIGGINS, J. Upon the original consideration of this appeal this court was of the opinion that the assignments of error should not be considered because not in compliance with the rules. 157 S. W. 748. A writ of error was granted and it was held by the Supreme Court (221 S. W. 254) that we erred in failing to consider the assignments, and the cause was remanded to this court, with instructions to consider the assignments upon their merits. The jury returned a verdict for $9,250 in favor of the plaintiff, J. D. Lee, and judgment for that amount was rendered in his favor against the defendant, El Paso Electric Railway Company. Upon consideration of the motion for new trial the trial court required the plaintiff to remit $3,250. This remittitur was filed by the plaintiff and the motion for new trial was overruled. The defendant then prosecuted this appeal.

The nature of the suit, as stated in the appellant's brief is as follows:

"This was a suit for personal injuries sustained by plaintiff while an electric lineman in the employment of the defendant. Plaintiff, in attempting to step across two wires at the top of a pole, came in contact with them and was burned. The issue was simple in its nature and clearly defined; plaintiff claimed that he did not know the wires were charged with electricity, and that his foreman told him that they were not charged; defendant claimed that plaintiff did know that the wires were charged and that the foreman did not tell him that they were not charged. To plaintiff's knowledge, defendant showed that plaintiff in the morning, when he disconnected them, got the same wires crossed, thus causing a short circuit and a flash and a blaze, so that he knew that they were charged with electricity before he got his injury in the afternoon."

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

This statement is adopted with the qualification that it was an issuable fact whether the plaintiff knew that the wires were charged with electricity before he received his injury.

The first assignment reads:

"That the verdict of the jury was contrary to the law and the evidence in this: That under the proof a preponderance of the evidence showed that plaintiff knew that the wires with which he was working, or in reason should have known that the same were charged with electricity, and that it was through his own negligence in the manner in which he did his work after knowing, or having an opportunity to know, that said wires were charged with electricity, that he was injured."

Its supporting proposition reads:

"Plaintiff's suit being based upon his ignorance of power in the wires that caused his injuries, he could not recover if he knew, or under all the circumstances should have known, that the wires were charged."

The appellant's contention in this matter, judging from the testimony quoted in its brief, seems to be that Lee must necessarily have known that the disconnected wires upon which he was working were charged with electricity and dangerous, because earlier in the day he had been shocked by a "short" coming from those two wires. It was shown by several witnesses that in the morning sparks of electricity had emanated from some of the wires upon the cross-arms, caused by a short circuit. Several witnesses testified that the "short" came from the same disconnected wires which subsequently burned and injured appellee, but appellee denied that the "short" came from the disconnected wires. He testified that it came from other wires. The testimony of Lee abundantly raises an issue of fact in this connection. That an issue was raised is shown by these excerpts from Lee's testimony, as it is quoted in appellant's brief, as follows:

"I asked Hern about the electricity in the wire after I cut these two wires that went north and south. When I cut those two wires in two, I did not get a 'short.' * * * I got a short circuit on the other two on the other side, on the north side of the arm, running north from this pole." S. F. p. 13.

"If I had gotten that 'short' from the two wires that caught me, I would, of course, have known that they were charged." S. F. p. 14.

"I got the 'short' on the OO on the other side of the arm. I did not get that on the south side of the arm. I judge he (Hern) could see from where he was standing which wires I got the 'short' on, and these other men could see it." S. F. p. 21.

[1] The quoted testimony alone, in our opinion, raised an issue of fact as to the matter covered by this assignment, and the jury having found the issue in Lee's favor, it cannot be set aside by this court. Later on in this opinion Lee's testimony is quoted at some length, and it amply shows that upon the question of notice that the disconnected wires were charged with electricity such testimony raised an issue of fact for the jury to pass upon.

The second assignment reads:

"For the reason that the ——— paragraph of the charge of the court was upon the weight of the evidence and contrary to the issues made by the pleading and proof, in this, that it was not alleged and proved that 'defendant's foreman, T. E. Hern, in the afternoon, directed plaintiff to connect the wires with which he had been working, and that before connecting same plaintiff asked said foreman whether or not said wires were charged with electricity and that said foreman, in answer to said inquiry of plaintiff, informed plaintiff that said two wires were not charged with electricity after they were cut.' Wherefore, the charge of the court, as follows, was upon the weight of the evidence, misleading, and tended to prejudice the defense of the defendant, through the court's intimating to the jury a contrary state of facts from which were alleged and proved, as follows: 'That thereafter, in the afternoon, he was further directed by said foreman, to connect said wires, and that before attempting to connect same, if he did and you so find, he asked said foreman whether or not said wires were charged with electricity and that said foreman, in answer to said inquiry of plaintiff, if any, informed plaintiff that said two wires were not charged with electricity after they were cut out, if he did and you so find, and you further find from a preponderance of the evidence that such statement, if any, made by said foreman to plaintiff, led plaintiff to believe and that plaintiff did believe that said two wires were dead, if he did, and that while he was upon said pole in the discharge of his duties, and while exercising due care and caution for his own safety, his legs came in contact with said two wires, and by reason of same being charged with electricity he was injured, as alleged by him, etc., * * * then and in that event your verdict will be for the plaintiff."

In support of the assignment this proposition is submitted:

"It is reversible error for the court in its charge to suggest the existence of a circumstance which all the proof shows did not exist, when the existence of such circumstances would render valueless the important fact shown by defendant to prove plaintiff's contributory negligence."

The appellant's criticism of the charge is amplified and more definitely stated in its argument as follows:

"The court suggested to the jury that the foreman told plaintiff that the wires were not charged when he sent him to connect the wires in the afternoon. The evidence shows that the conversation in which plaintiff claims defendant's foreman told him the wires were not charged occurred in the morning, before plaintiff got a short circuit. The short was gotten by plaintiff from the very wires, according to

defendant's witnesses, that hurt him in the afternoon, and it was proved that from this he knew the wires were charged. The court intimated that plaintiff was told by his foreman in the afternoon, several hours after he got the short circuit, that the power was then cut out, thus leaving the jury to believe that Hern's assurance in the afternoon substituted a new impression for the one created in plaintiff's mind by the short circuit of the morning, thereby making the short circuit in the morning of small consequence, if in the afternoon several hours afterwards plaintiff were told by his foreman that the power was cut out.

"It may be contended by the manner in which the court framed the instructions that the court left the question with the jury as to whether the foreman told the plaintiff about the wires in the afternoon, and that the court did not assume that said conversation occurred in the afternoon. This position, however, is not tenable. The charge is: 'That thereafter, in the afternoon, he was further directed by said foreman to connect said wires, and that before attempting to connect same, if he did (he did attempt to connect same), and you so find he asked said foreman whether or not said wires were charged with electricity, and that said foreman, in answer to said inquiry of plaintiff, if any (plaintiff did make an inquiry), informed plaintiff that said two wires were not charged with electricity, but they were cut out, if he did and you so find (plaintiff testified that the inquiry was made and answered, but that this took place in the morning).

"Thus it will be seen that the court assumed that when plaintiff went up to connect the wires in the afternoon he had the conversation with Hern. And it will be seen that this assumption on the part of the court would make nil the short circuit feature of the morning, which occurred after the conversation about the power in the wires, which short circuit defendant relied upon to show that plaintiff knew the wires were charged with electricity. The jury might well say that if Hern told plaintiff in the afternoon that the wires were not charged, after Hern had been working over at the Southwestern shops and other places, that under all the circumstances the plaintiff might then rely upon such statement and believe the power had later been cut out, though he knew in the morning, from the short circuit, that there was then electricity in the wires that injured him."

The entire charge of the court submitting the issuable facts was as follows:

"IV. You are instructed that street car companies operating 'electric light plants and wires are not to be regarded as insurers of the safety of their linemen and other employés constructing or repairing electric light wires, and when one enters the employ of such company as a lineman he assumes all the risks that are ordinarily incident to the business, but he may assume that such company, and its foreman in charge of the work which such employé is doing, will exercise ordinary care in the performance of their duties, and he does not assume the risk of any danger that may be brought about by reason of the negligence of the company, or the foreman in charge of the work, unless he knows of such negligence and the attendant risks, or in the ordinary discharge of his duties he must necessarily have acquired the knowledge. And in this connection you are further instructed that it is the duty of street railway companies operating electric light plants, when acting by and through its servants and foreman, to exercise ordinary care to prevent and avoid injury to the employé who may be working and performing services under the orders and direction of such foreman, and to that end it is the duty of the foreman, in working with other servants and employés composing a crew, to exercise ordinary care to prevent and avoid injuring the employés working under him while engaged in the discharge of their duties incident to their employment in repairing electric light wires charged with electricity, and failure upon the part of such foreman to exercise ordinary care and prudence in the performance of his duty, is negligence.

"V. It is the duty of every person to use such care and caution as a person of ordinary prudence and caution would commonly exercise to avoid injury to himself, and the degree of care required is always proportionate to the degree of danger indicated by the facts and circumstances of each particular case, or that which might have been reasonably foreseen by a person of ordinary prudence and care, and failure to exercise such care is negligence. And by 'contributory negligence,' as that term is used in this charge, is meant some negligent act or omission on the part of the plaintiff which, concurring or co-operating with some negligent act or omission upon the part of the defendant, or its foreman, is the direct and proximate cause of the injury complained of.

"Now, therefore, if you find and believe from a preponderance of the evidence that on or about the 10th day of August, 1911, plaintiff was employed by the defendant as a lineman and working under the direction and orders of T. E. Hern, as foreman, and while thus employed he was ordered and directed by said foreman to cut certain wires on one of defendant's poles, situated at the corner of Alameda and Piedras streets, in El Paso, Tex., and that thereafter, in the afternoon, he was further directed by said foreman to connect said wires, and that before attempting to connect same, if he did and you so find, he asked said foreman whether or not said wires were charged with electricity, and that said foreman, in answer to said inquiry of plaintiff, if any, informed plaintiff that said two wires were not charged with electricity after they were cut, if he did and you so find, and you further find from a preponderance of the evidence that such statement, if any, made by said foreman to plaintiff led plaintiff to believe, and that plaintiff did believe, that said two wires were dead, if he did, and that while he was upon said pole in the discharge of his duties, and while exercising due care and caution for his own safety, his legs came in contact with said two wires, and by reason of same being charged with electricity he was injured, as alleged by him, and you further find from a preponderance of the evidence that, under all the surrounding facts and circumstances in evidence before you, said foreman, at and prior to the time of said alleged injuries to plaintiff, knew, or could have

known by the exercise of ordinary care, that said wires were charged with electricity by reason of some other connection or contact, and was thereby guilty of negligence, if any, as that term has been heretofore defined, in telling plaintiff that said wires were dead, if he did 'so tell him and you so find, and you further find and believe from a preponderance of the evidence that such negligence, if any, on the part of said foreman, was the direct and proximate cause of plaintiff's said accident and consequent injuries, if any, and you find that plaintiff himself did not assume the risk and was not guilty of contributory negligence, then and in that event your verdict will be for the plaintiff.

"You are further charged that if you believe from a preponderance of the evidence that the plaintiff was directed to perform the work of cutting the wires at the time and place charged by plaintiff, and thereafter to reconnect said wires when the same were charged with electricity, and you further believe and find that the plaintiff knew that the wires were charged with electricity and the danger incident to coming in contact with them so charged, or by the exercise of ordinary care and circumspection could have known thereof, and plaintiff failed to exercise such care and circumspection, he would, in law, be held to have assumed the risk of injury to himself in cutting said wires and reconnecting the same so charged with electricity, and your verdict must be for the defendant, and notwithstanding you may believe that the plaintiff was directed to do the work by the defendant's agents or employés with knowledge upon their part that the wires were charged with electricity.

"You are further charged that if the plaintiff was guilty of negligence contributing to cause his injury he cannot recover. If, therefore, you believe from the evidence that plaintiff was injured, but you further believe that such injury, if any, was caused by his own reckless or negligent acts or omissions and the manner and way in which he performed his work, that is, if the plaintiff, while in the act of connecting the wires and passing across them from one position to another to perform the work in hand, was not using due care and caution for his own safety, and did not try to inform himself that the wires were charged with electricity, but treated said wires as uncharged wires or dead wires, without any information as to whether or not the wires were charged, or if you believe that he asked T. E. Hern if the wires were dead and was told that they were dead and not charged with electricity, but you further believe that plaintiff was guilty of negligence in acting upon the statement of said Hern that the wires were not charged, if he made such statement and you so find, or if you believe that the defendant could have changed his position by going under the wires, or that he could have taken a proper position in some other way, in safety, and that he did not do so, and you believe from all the facts and circumstances in evidence that he was guilty of negligence in not so doing, then and in any of said events he would, in law, be guilty of contributory negligence, and you will find for the defendant, and you will so find, notwithstanding you believe that the defendant was

guilty of negligence in some way charged in plaintiff's petition. Unless you believe from a preponderance of the evidence that defendant's foreman, T. E. Hern, was guilty of negligence, as that question has been submitted to you in paragraph 7 of this charge, heretofore submitted to you for your consideration, and that such negligence, if any, was the proximate cause of plaintiff's accident, your verdict must be for the defendant."

The plaintiff's theory of the case is disclosed by the following excerpts from his testimony:

"The pole which I was working on would be about this way (indicating); this would be Alameda avenue running east and west; with reference to Alameda avenue, the pole is on the northwest corner; Piedra street runs right along here. I went up that pole in the morning to the second cross-arm from the top, and I put on a span wire on the second arm from the top; then in the morning I put a span wire on the top arm, leading across Alameda avenue south; then I put a pair of blocks on the same top arm to keep the arms from pulling together, and I cut out two wires that came across here. By 'cut out' I mean I cut them dead; cut them in two; cut them from two wires over here, running over on the same arm, and cut these two off and ties them around this top cross-arm, and I took the other two that were on the same insulators off, and I tied them around the top arm. There were two wires running north and south across this direction, and I cut them in two and tied them around the arm, two on the south side and two on the north side. Then we came down about that time and went to dinner, and I asked Elmer Hern, the foreman, if those two wires across here were cut out, if they were cut dead, and he says 'Yes;' that they were cut dead; then I went to dinner. When I came back from dinner I went down to the Southwestern shops, a block and a half from there, and we pulled those wires that I had deadended on these pins and insulators on the north side, and we went down to the Southwestern shops to pull them; by that I mean pull them up tight. Then we worked there until about 4 o'clock in the evening, and Elmer Hern, the foreman, says to me, 'You go back up and put on some jumpers on to those two wires.' Jumpers are these: Two wires that come here and the two wires that come here don't connect together, and the jumpers were to jump the current up from these two wires to these two wires that go this way; they cross one another there. By jumpers I mean taking a wire and connecting it, lifting it around, wrapping it around this one, and wrapping it around this wire on the top; I did that, and then I came up about 4 o'clock, and I clumb the pole to these two wires, and got out here on the end of the third arm from the top and put on the jumpers, and I was reaching from here out to here to put a jumper on the end of this arm, and I put that on, and then I had another one to get on, on the inside, and I clumb back over these two wires, and when I stepped up there, as I started to climb over, these two wires caught me and burned me, and when I fell, I fell over the end, by the top arm, and

went under the third arm from the top. The two wires that I got burns by were ones running south and were fastened around the top arm; they went off down a block and a half from there and went east. Before I cut those two wires they were fed from these two wires that came across here; they were not fed from the wires that came from the north, but from the wires coming from down Alameda avenue; I don't think they were fed from any wires coming from the south, as far as I knew. They were fed from the ones coming from the west going east when I cut them. If that condition had been true, when I cut those two wires that I got burnt on, they would not have been charged with electricity after I cut them; that is, we thought they were not charged, but they were; the foreman told me they were not charged. I knew that the electricity was fed from the wires coming from the west going east. If those wires had not been connected anywhere else when I cut them here, then there would have been no electricity in those wires: At the time I cut those wires I knew they were connected with wires running to the power house; they were live wires then; the electricity in them came from the power house, coming from the west, going east on the second arm from the top. I knew that. At that time I did not know that those wires had any feed connections south of this pole. If they hadn't any feed connections south, they would have been dead; I believed them to be dead after I cut them, because I cut them out; by cutting them out, I mean I cut them dead.

"At that time I was not familiar with the customary manner and way with which the wires were charged with electricity from the power house. As to what had been my instructions with reference to the manner and way in which the wires were charged—coming out from the power house there would be two wires leading off, and I was instructed that they were charged with electricity in one place. If they were only charged in one place, and I cut them in two, that would kill one end of them; it would cut the end leading off from the main wires coming from the power house. When I cut these wires I cut them in the morning. After I cut the wires I received instructions with reference to these two wires from the foreman. I asked him if they were cut out, and he said, 'Yes; they are cut out.' I asked him that so I could come back and connect them up if they were cut out. As to whether or not I knew that I would have to reconnect those wires at any time that day, I thought I would have to give the people lights over on that side of town.

"In that conversation about the wires being dead, the foreman said to me to go up there and cut them out, and then he says, 'Wait a minute; I will go over here to this saloon and see if they have any fans running;' these two wires fed that saloon over there; and then, I don't know whether he went over or not, as I didn't watch him, but he came back in a little bit and says, 'Go ahead and cut them out; we will only have them out for a little while.' By 'cut them out' I understood him to mean to cut them out, so as to cut them dead; that we wouldn't have them dead long. As to how I then fastened them, I tied them around the top arm. Before I went back to work, when I got up there, they were just like I left them, only they were a little bit tighter; he told me to leave them slack and we would pull them up, and I did.

"I had dead-ended the 00 wires, that is, the two that ran over the top; I dead-ended them around the two insulators and pins on the top arm on the north side of the arm. Then we went over to the Southwestern shops on North Piedra, and we worked there that evening until he told me to come back and connect them up; he told me to leave this slack on this side, on the south side. Mr. Hern told me to leave that slack on the south side of Alameda, so that when we pulled it on the north side we could pull the arms around and leave them straight with the street. When I came back and clumb up there, he ordered me back to connect these wires. At the time he gave me that order to connect them up he did not say anything to me about whether or not they were charged. I did not know whether or not they were charged; I thought they were not. When I got up there I did not see anything to indicate to me as an electrician that those wires were live wires; there was nothing to indicate that. * * *

"I have ascertained, since the accident, how those two wires came to be charged; they were fed by a loop back around to the same pole; there had been two connections. During my experience I had never worked with wires that were fed in two places. From my experience, I did not, at that time, think that could be done; I thought it would have burnt one or the other of the wires down, because I thought whenever they were connected with primaries they can two wires and tapped them on a single phase, and I didn't know they could run them two down there and run them around and bring them back around here and cut them in on the same two wires. Those wires went south on Piedra street, a block and a half south, and then they went east about ten blocks. This feed was at this far end down there, east, from some other wires direct to the power house; they were fed down a block from there; then they went east. Mr. Hern did not at any time notify or warn me of the fact that these two wires had a double feed. I had never been instructed, while working for the defendant and learning me trade, that wires could be fed in double contact. I had never seen that. As to what were my duties with reference to obeying the commands of any one at this time, my duties were to do whatever the foreman, Elmer Hern, told me to do, any kind of work. Elmer Hern employed me, and my duties were to do whatever he asked me to or told me to do—to obey his instructions and orders. He had authority to discharge me, and he employed me. * * *"

[2] Considering the court's charge as a whole and in connection with the issues raised by the evidence, we are of the opinion that it is not subject to the criticism made by appellant. For this reason the second assignment is overruled.

The third assignment submitted as a proposition reads:

"The court erred in refusing to give to the jury defendant's third special charge, for the reason that defendant therein grouped the facts

tending to show plaintiff's contributory negligence, as pleaded and proved by defendant, and the court in its main charge in no place instructed the jury as to the facts bearing upon plaintiff's contributory negligence, as set out in said special charge No. 3."

The special charge referred to in this assignment reads:

"You are instructed as follows: That if you believe from the evidence that T. E. Hern, foreman, under whom plaintiff was working, did not tell plaintiff, after he had disconnected the No. 6 wires from the insulators, that said wires were dead, or not charged with electricity, or not alive, and believe under the evidence that, after said plaintiff had disconnected said No. 6 wires going south on Piedras street, Foreman Hern did not tell plaintiff anything about the condition of said wires as to being charged with electricity at that time, but that plaintiff had gotten a short by the No. 6 wires when he disconnected the same in the morning, and thereby knew, or should have known in the exercise of ordinary care for his own safety, that on account of said short on said wires that same were charged with electricity, that then plaintiff would assume the risk of crossing over said wires as he did, as shown by the testimony, and could not recover for the injuries resulting from the manner in which he so crossed over said wires, and you will therefore, as to said issue, find for the defendant."

The fourth assignment submitted as a proposition reads:

"That the court erred in refusing to give the jury defendant's special charge No. 4 upon plaintiff's contributory negligence, since the general charge of the court did not make it clear to the jury as to the manner claimed by defendant that plaintiff might have crossed to the other side of said pole and been free from danger, and present to them the question as to whether or not the plaintiff was guilty of contributory negligence in failing to so cross to the other side of the pole upon which he was working."

Special charge No. 4 reads:

"You are instructed as follows: If you believe from the evidence and all the circumstances in this cause that if plaintiff, instead of crossing over said wires in the manner in which the evidence showed he did so cross over said wires, had gone beneath said wires that caused his injuries, and crossed over to the other side of said pole on the lower arm, and that had he so crossed over to the other side of said pole that he would not have been injured, and that in so failing to cross to the other side of said pole beneath said wires instead of over said wires was imprudent in plaintiff and not in the exercise of ordinary care by him, and that through said act of plaintiff in failing to exercise such ordinary care in passing across to the other side of said pole on said arm below said high powered wires he was injured, you will find that plaintiff was guilty of contributory negligence, and therefore find for the defendant herein, and so say by your verdict."

[3, 4] The charges referred to in these assignments were argumentative and upon the weight of the evidence. For this reason they were properly refused. But if they were not objectionable in the particular indicated, nevertheless the refusal thereof presents no error, for the reason that the subject-matter thereof was sufficiently covered and presented in the main charge of the court.

Under the last assignment complaint is made of the court's refusal to grant a new trial upon the ground that the jury arrived at the amount of its verdict by each juror writing down the amount he thought the plaintiff should recover, which amounts were added up, the total divided by 12, and the quotient fixed as the amount of the verdict. The juror Jeffress testified that it was agreed previously that the resulting quotient should be the verdict. In this he was contradicted by a number of the other jurors.

In substance, a number of the jurors testified that there was no agreement beforehand to abide by the result and return the quotient as their verdict. The testimony adduced abundantly warranted the trial court in finding that the jurors, being in disagreement as to the amount of the verdict, used the quotient simply as a working basis upon which to arrive at the amount of damages to allow; that there was no previous agreement to be bound by the result and return the quotient as their verdict, but that the quotient was agreed upon as the proper damages to allow after it had been ascertained. The trial court, after hearing the evidence, "held that there was no such irregularity or impropriety in the action of the jury in arriving at their verdict as would warrant a new trial, and then and there overruled defendant's motion for new trial. * * *"

[5] The statute vests a discretion in the trial judge in matters of this kind, and in view of the testimony this court would not be warranted in holding that his discretion had been abused. Kalteyer v. Mitchell, 102 Tex. 390, 117 S. W. 792, 132 Am. St. Rep. 889.

[6] It has been held many times that when there was no agreement beforehand to adopt the quotient as the verdict, and the quotient was to be used, and was used, merely as a working basis to arrive at the amount of the verdict, no reversible error is shown. Andrews v. York, 192 S. W. 338; Railway Co. v. Thomas, 175 S. W. 822; Railway Co. v. Morris, 144 S. W. 1163; Railway Co. v. Hawkins, 50 Tex. Civ. App. 128, 109 S. W. 224; and other cases to same effect cited in Thomas Case, supra. Under the authorities noted, the ruling of the lower court upon the issue of misconduct upon the jurors presents no error.

Chief Justice HARPER did not participate in the disposition of this appeal.

Affirmed.