600 P.2d 777

**Michael Bruce FUTRELL, Rocky Mountain Trout, Inc., an Idaho Corporation, and Rangen, Inc., an Idaho Corporation, Plaintiffs-Appellants,**

v.

**Sam MARTIN, Jack Dodson and Lloyd Dodson, Defendants-Respondents.**

No. 12703.

Supreme Court of Idaho.

Sept. 20, 1979.

John T. Lezamiz, of Hepworth, Nungester & Felton, Twin Falls, for plaintiffs-appellants.

Phillip M. Barber, of Elam, Burke, Jeppesen, Evans & Boyd, Boise, for defendants-respondents.

McFADDEN, Justice.

This action was instituted by the plaintiffs-appellants seeking damages they suf-

fered as a result of a truck and trailer overturning. Plaintiff Michael Bruce Futrell, the driver of the truck, and an employee of Rangen, Inc., was injured in the accident and he sought damages for his injuries, medical expenses, and loss of income. Plaintiff-appellant Rangen, Inc., an Idaho corporation, was the employer of Futrell, and the owner of the 40 foot trailer involved in the accident; plaintiff-appellant Rocky Mountain Trout, Inc., an Idaho corporation, owned the 1969 Kenworth truck-tractor towing the trailer. The corporate plaintiffs-appellants seek damages for the repair of the truck and trailer and for loss of use of this equipment. The Kenworth truck was leased by Rocky Mountain Trout, Inc., to Rangen, Inc., at the time of the accident.

Defendant-respondent Sam Martin, the driver of a farm tractor towing a land leveler at the time of the accident, was employed as a farm laborer by defendants-respondents Jack and Lloyd Dodson. The Dodsons, Martin's employers, were joined as defendants on either the theory of respondeat superior or statutory imputation of liability.

Trial before a jury resulted in a verdict in favor of the defendants. The jury returned its special verdict by answering the first interrogatory, "[w]as the defendant, Sam Martin, negligent?" with the answer "[n]o." Under the special verdict form, this negative answer dispensed with the need to answer other interrogatories. Judgment for defendants was entered on this verdict. An alternative motion under I.R.C.P. 50(b) for judgment notwithstanding the verdict or for new trial was timely filed by appellants. Respondents filed their cost bill, including request for attorney fees, and appellants objected to the inclusion of attorney fees as an item of costs. The trial court denied appellants' motions for judgment n.o.v. or for new trial and the objection to award of attorneys fees in the cost bill. This appeal was then taken from the judgment, the order denying appellants' motion for judgment n.o.v. or for new trial and the order awarding respondents attorney fees.

The principal issue presented by this appeal is whether the evidence is sufficient to support the jury verdict, i.e., that respondent Martin was not negligent. Appellants present this issue by challenging the sufficiency of the record to support the finding by the jury of absence of negligence on the part of Martin, and the judgment entered on the basis of this verdict. The same issue is likewise presented by appellants' contention that the trial court should have granted their motion for judgment n.o.v. or for new trial. Corollary of this principal issue is the contention of the appellants that the trial court erred in failing to grant their motion for a directed verdict on the issue of Martin's negligence at the close of the appellants' case in chief. Other subsidiary issues will also be discussed.

Certain undisputed facts are established in this record. On May 15, 1975, appellant Futrell was driving a Kenworth truck and tank trailer loaded with liquid fertilizer easterly on Addison Avenue East about four miles east of Twin Falls. The accident occurred shortly after noon on that day. The place of the accident was on a stretch of straight dry highway, bordered on each side by farm properties. Respondent Martin drove the tractor and land leveler onto this highway from a field lying south of the highway. He proceeded easterly to a point where he wished to turn to his left (north) to enter another field where he was to start leveling the land. The truck-trailer was overtaking the farm tractor from the rear and overturned at about the place where Martin exited the highway on the south side of the road, damaging both the truck and trailer and injuring the driver.

Other facts are in dispute. Appellant Futrell's version of the facts are that as he approached the farm tractor and leveler from the west, he pulled from his right lane into the left lane planning to pass the farm tractor and land leveler on the left, and without warning of any kind Martin unexpectedly made a sharp turn into the left hand lane of traffic. Futrell testified that in order to avoid hitting the tractor and leveler, he immediately hit his brakes and

turned his truck sharply to the right. He believes that he blew his horn. As a result of this turn to the right, Futrell missed the tractor and leveler but in so doing he drove to the right shoulder of the highway encountering a sharp borrow pit which caused the 40 foot loaded trailer to start to turn over, which in turn pulled the truck-tractor over, both the truck-tractor and attached trailer ending up overturned on their right side in the borrow pit.

On the other hand, Martin's version of what happened was that he first became aware of the truck driven by Futrell when it was over a half mile behind him. Martin testified that when he got to within 125 to 130 feet from the farm gate into which he planned to make a left turn, he signaled by extending his left arm straight out while holding his red cap in that hand. This farm tractor was not equipped with factory electric turn signals, but both it and the leveler had "Slow Vehicle" signs displayed. Martin claims that Futrell was an eighth of a mile behind him at the time he made his left arm signal, and after making the signal he gradually pulled the tractor and land leveler into the left hand lane. Continuing his signal, Martin drove down the left lane until he reached the farm gate, where he turned left off the highway into the field. Martin claims that he had no impression at any time that Futrell was trying to avoid him or that his presence on the highway was involved in the accident. Martin repeatedly testified that he had pulled out of the left lane of traffic and was fully into the farm field by the time the accident to the truck and trailer occurred. He stated

he was dismounting from the tractor, which was in the field with the leveler through the farm gate, when he first heard the brakes on the truck. As he stepped from the tractor, Martin said he looked around and saw Futrell's truck going slowly down the highway and off the right hand shoulder of the road and overturning. The overturned truck and trailer were about opposite from the farm gate after the accident.

At the outset, it is evident that there were two conflicting versions of how the accident occurred. From the verdict, it is apparent that the jury accepted Martin's version of the accident. Under the state of the record there was competent, although conflicting evidence to sustain this verdict. Under such circumstances (assuming there was no error of law in the instructions to the jury) this court cannot set aside such verdict. *Fowler v. Uezzell*, 94 Idaho 951, 500 P.2d 852 (1972); *Werry v. Phillips Petroleum Co.*, 97 Idaho 130, 540 P.2d 792 (1975). However, appellants do assert that there was an error of law involved and that Martin was guilty of negligence as a matter of law. This argument is based on appellants' contention that Martin made a lane change from the right to the left lane of traffic without first signaling for 100 feet prior to the lane change his intention to make such change of lane. This contention is based on their interpretation of I.C. § 49–724.[1]

Appellants contend that Martin was required to indicate his intended change of lane from the right hand lane of traffic to the left hand lane of traffic at least 100

1. This statutory provision was in effect at the time of the events involved in this instant action. It was repealed, S.L.1977, Ch. 152, § 1, and new statutory provision was enacted, S.L. 1977, Ch. 152, § 3, p. 370, as I.C. § 49–664.

In effect at the time involved, I.C. § 47–724 provided:

"49–724. Turning movements and required signals.—(a) No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in § 49–721, or turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such move-

ment can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement. (b) A signal of intention to turn right or left when required shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning. (c) No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear where there is opportunity to give such signal."

feet prior to the time that he commenced making this turn. Martin testified to the effect that he signaled a "left hand turn" by extending his left arm holding his cap out the left window of the tractor's cab some 125 to 135 feet prior to making his left hand turn off the highway; he also testified that he had looked back and observed the truck an eighth of a mile behind him when he made the lane change from the right lane to the left lane. However, he did not signal this left lane change until he commenced the change. The appellants point to the provisions of I.C. § 49–724(a) which provides "[n]o person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement," and also to subparagraph (b) which provides "[a] signal of intention to turn right or left when required shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning."

On this appeal the appellants also point out the provisions of I.C. § 49–708 [2] and claim that Martin was also violating this statute when he changed to the left hand lane of traffic, and hence the jury verdict was wrong as a matter of law.

2. I.C. § 49–708 also was in effect during the times involved herein. It too was repealed in 1977. S.L.1977, Ch. 152, § 1.

  In effect at the time involved, it provided: Drive on right side of roadway—Exceptions —(a) Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:
  1. When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement;
  2. When the right half of a roadway is closed to traffic while under construction or repair;
  3. Upon a roadway divided into three (3) marked lanes for traffic under the rules applicable thereon; or
  4. Upon a roadway designated and signposted for one-way traffic. (b) Upon all roadways any vehicle proceeding at less than the normal speed of traffic at the time and place and under the conditions then existing shall be driven in the right-hand lane then available for traffic, or as close as practicable to the right-hand curb or edge of the roadway, except when overtaking and passing another vehicle proceeding in the same di-

Respondents, on the other hand, argue that I.C. § 49–724 does not warrant the interpretation placed on it by appellants. Respondents point out that subdivision (a) specifically distinguishes between "movement" and "turning," and this distinction is not brought forth into subdivision (b) of the statute which suggests that the legislature did not intend that a driver of a vehicle give a warning continuously for the last 100 feet prior to a lane change but only the last 100 feet prior to an actual turn. Respondents also point to the fact that in 1977 the legislature enacted the provisions of I.C. § 49–664.[3] Subdivision (1) of that statute states that "[n]o person shall turn a vehicle *or move right or left upon a roadway* unless and until such movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided." Subdivision (2) requires a driver to give "[a] signal of intention to turn *or move* right or left . . . ." (Emphasis added.) Respondents argue that this expressed a legislative intent to join both turning and moving right or left on a highway under the same duty for advance warning, and recognizes that the previous statute (I.C. § 49–724) inadequately governed the situations involving a change of lane.

  rection or when preparing for a left turn at an intersection or into a private road or driveway." .

3. "49–664. Turning movements and required signals.—(1) No person shall turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided.

  (2) A signal of intention to turn or move right or left when required shall be given continuously to warn other traffic. On controlled-access highways and before turning from a parked position, such signal shall be given continuously for not less than five (5) seconds and, in all other instances, for not less than one hundred (100) feet traveled by the vehicle before turning.

  (3) No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal. . . . "

■ It is the conclusion of the court that respondents have correctly interpreted the provisions of I.C. § 49–724 in effect at the time of the accident. Under sub-paragraph (a) a person is prohibited from either making a turn "to enter a private road or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety." It also provides for the giving of appropriate signals if other traffic may be affected. However, the only reference to the giving of a continuous signal of intention to turn right or left is provided in sub-paragraph (b) which requires that such signal be given "continuously during not less than the last 100 feet traveled by the vehicle *before turning.*" The statute does not require the giving of a signal for the last 100 feet prior to moving right or left upon a roadway. The statute further provides that no person shall "otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety." (Emphasis added.) It is our conclusion that the underlined portion of the statute is further modified by the next sentence which states: "No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement." This latter sentence thus eliminates the necessity of signaling unless other traffic may be affected by such movement. In this case the jury could reasonably have accepted Martin's testimony that when he moved from the right hand lane to the left hand lane preparatory to making the left turn off the highway that appellant's truck was an eighth of a mile behind him.

■ Nor can appellants take comfort in the provisions of I.C. § 49–708 [see n.2], for the last portion of the statute states "except . . . when preparing for a left turn . . . into a private road or driveway." This provision allows the driver to move from the right hand lane to the left hand lane preparatory to making a left turn off the highway, which is the situation under the facts of this case.

It is the conclusion of the court under the foregoing analysis of the statutes involved, that the trial court did not err in denying appellants' motion for judgment n.o.v. or for new trial which was based on the theory that as a matter of law Martin was negligent. Also the same reasoning is applicable to the trial court's ruling denying appellants' motion for a directed verdict. It is the further conclusion of the court that the record, albeit containing conflicting evidence, reflects substantial, competent evidence to sustain the jury's verdict on the facts and on the basis of the law.

■ Appellants further contend that the trial court erred in failing to give their requested instructions nos. 48, 49 and 51. These requested instructions were generally based on the duty of a driver imposed under I.C. § 49–724. The trial court gave an instruction quoting verbatim this statutory provision stating it to be a "rule of the road" and also stating that a violation of the statute is negligence as a matter of law.

Requested Instruction no. 48 states: "A driver who without warning, turns a slower moving vehicle to the left side of the highway . . . ." Such a statement must be considered as a statement of fact, or at least a comment on the evidence, as it presupposes the existence of facts which were in issue. Requested Instruction no. 49 is so phrased as to infer that Martin, even if he did signal his intention to make a turn, could not make such a turn oblivious of dangers to following vehicles. As phrased, this instruction infers the existence of dangers to following traffic, when again that was one of the issues in controversy and for resolution by the jury. It is our conclusion that the trial court did not err in refusing to give these two instructions for each contains a statement of or comment on the evidence in the case. *Elliott v. Lee,* 71 Idaho 242, 229 P.2d 1000 (1951).

As concerns the refusal to give Requested Instruction no. 51, we find no error. It is the conclusion of the court that the gist of the law contained in this instruction was covered by other instructions and particu-

larly the instruction based on I.C. § 49–724 given by the court. The facts of this case were not so intricate as to require the trial court to amplify various factors which might affect the amount of care required by the statute.

Appellants present as their final issue on this appeal the question of whether the trial court erred in awarding respondents attorney fees for the defense of this action. I.C. § 12–121, enacted in 1976, became effective on July 1, 1976, subsequent to the time this action was filed but before the time the judgment and memorandum of costs and affidavit for attorney fees was filed and a hearing held on objections to the costs. In *Jensen v. Shank*, 99 Idaho 565, 585 P.2d 1276 (1978), this court held that I.C. § 12–121 applied to claims for relief that arose prior to its effective date. That case also held that the trial court properly included attorney fees as costs.[4]

■ Appellants also assert that respondents should not be awarded attorney fees at the trial level because respondents did not incur any attorney fees inasmuch as they were represented by their insurance company. We find no merit in this position. The purpose of I.C. § 12–121 was in proper cases to impose the actual costs of litigation on the unsuccessful parties, in the court's discretion.

■ Appellants also object to the way the award of attorney fees was computed, contending that fees should be awarded only after hearing evidence of the time records of the counsel involved, the reasonable hourly rate of attorneys in the area, the qualification of the attorneys and any other evidence having a bearing upon the question of a reasonable attorney fee. However, the record reflects that at a hearing held on the objection to the attorney fees the parties stipulated to the effect that each party would call as a witness an attorney who would testify as to his opinion of a reasonable charge; that the witness for respondents would testify to the effect that

the fees set forth in the cost bill were reasonable, and that the witness for appellants would testify to the effect that the fees should be charged at a lesser rate than those set forth in the affidavit as to attorney fees. Under these circumstances it is the court's conclusion that the award of attorney fees by the trial court was within its discretionary power and we affirm. *Minich v. Gem State Developers*, 99 Idaho 911, 591 P.2d 1078 (1979).

■ Respondents also seek attorney fees on this appeal. We find no reason to grant attorney fees on appeal, for it is self evident that there is nothing to reflect that this appeal was "brought, pursued or defended frivolously, unreasonably or without foundation." *Minich v. Gem State Developers*, supra, 99 Idaho 911, 591 P.2d at 1085.

The judgment is affirmed. Costs to respondents.

DONALDSON, C. J., and SHEPARD, BAKES and BISTLINE, JJ., concur.

---

4. It is to be noted that at the time counsel submitted their briefs in this instant appeal they did not have the benefit of the opinion in *Jensen v. Shank, supra.*