631 P.2d 622 (1981)
102 Idaho 451
STATE of Idaho ex rel. Wayne L. KIDWELL, Attorney General; and David H. Leroy, Ada County Prosecuting Attorney, Plaintiffs-Appellants, Cross Respondents,
v.
U.S. MARKETING, INC., an Idaho corporation, 4094 Chinden Blvd., County of Ada, State of Idaho, Lot 34, Block 6, Fairview Acres Subdivision # 1; Lamar Larsen, Manager and Property Incorporator, Jean Larsen, Manager; Don Cossette; Tom Shaw, Owner and Incorporator; David Burton, Clerk; Jerry Van Camp, John M. Southworth, Individually, and as Contract Property Owners; John Doe # 1, Arcade Machine Owners or Lessors; John Doe # 2, Security Interest Holder; John Does # 3-10, Defendants-Respondents, Cross Appellants, and
Niks & Naks Adult Bookstore, a business, 3988 Chinden Blvd., Garden City, County of Ada, State of Idaho, Lot 34, Block 7, Fairview Acres Subdivision #1; Robert S. Loya, Owner; Joseph E. Osco, Betty Osco, Owner, Managers; Melvin Winn, Clerk; Cecil Andrew Johnson, Jr., and Helen M. Hanson, Property Owners; John Doe # 1, Arcade Machine Owners or Lessors; John Doe # 2, Security Interest Holder; John Does # 3-10, Defendants-Respondents, Cross Appellants.
STATE of Idaho ex rel. Wayne L. KIDWELL, Attorney General; and David H. Leroy, Ada County Prosecuting Attorney, Plaintiffs-Respondents, Cross Appellants,
v.
U.S. MARKETING, INC., an Idaho corporation, 4094 Chinden Blvd., County of Ada, State of Idaho, Lot 34, Block 6, Fairview Acres Subdivision # 1, County of Ada, State of Idaho; Lamar Larsen, Manager and Property Incorporator; Jean Larsen, Manager; Dan Cossette; Tom Shaw, Owner and Incorporator; David Burton, Clerk, Defendants-Appellants, Cross Respondents, and
Jerry Van Camp, John M. Southworth, Individually, and as Contract Property Owners; John Doe #1, Arcade Machine Owners or Lessors; John Doe #2, Security Interest Holder; John Does # 3-10, Defendants, and
Niks & Naks Adult Bookstore, a business, 3988 Chinden Blvd., Garden City, County of Ada, State of Idaho, Lot 34, Block 7, Fairview Acres Subdivision # 1; Robert S. Loya, Owner; Joseph E. Osco and Betty Osco, Owner-Managers; Melvin Winn, Clerk, Defendants-Appellants, Cross Respondents, and
Cecil Andrew Johnson, Jr., and Helen M. Hanson, Property Owners; John Doe # 1, Arcade Machine Owners or Lessors; John Doe # 2, Security Interest Holder; John Does # 3-10, Defendants.
Nos. 12867 and 12910.
Supreme Court of Idaho.
May 29, 1981.
Rehearing Denied August 17, 1981.
*623 David H. Leroy, Atty. Gen., Lynn E. Thomas, Timothy M. Walton, Deputy Attys. Gen., Boise, for plaintiffs-appellants, cross respondents.
David W. Cantrill, Cantrill & Skinner, William J. Tway, Tway & Tway, Boise, for defendants-respondents, cross appellants.
BAKES, Chief Justice.
The state commenced this action against two Garden City adult bookstores under the provisions of the Idaho Moral Nuisance Abatement Act. I.C. §§ 52-401, et seq. Named as defendants were two business entities, U.S. Marketing, Inc., and Niks & Naks Adult Bookstore; their managers, owners, officers and incorporators; and *624 those individuals who owned the two parcels of property upon which the bookstores were located.
The state sought to have some of defendants' films and publications declared obscene. The state asked for injunctive relief abating the alleged nuisance; a one-year forfeiture of the use of the real property in question; and an award of the costs of abatement including, but not limited to, investigative costs, court costs and attorney fees. The state also requested other relief not relevant on appeal.
Responding to a motion to dismiss, the trial judge disposed of several threshold constitutional issues. The judge held that nuisance abatement proceedings are a proper and constitutional method of attempting to control the sale and distribution of obscene materials. He concluded that the defendants could be enjoined from further sale and distribution of those materials adjudicated to be obscene. However, the judge held that those statutory provisions which permit any forfeiture or closure of the physical premises and real property, see I.C. §§ 52-406 and -412, constitute an unlawful "prior restraint" on free speech and a violation of due process.
The owners of the two parcels of property in question were then dismissed from the lawsuit. Two of those individuals, defendant respondents Cecil Johnson and Helen Hanson, lease their property to Niks & Naks. Johnson and Hanson were dismissed presumably because the remedies available against the real property were held to be unconstitutional. After granting the motion to dismiss, the trial judge awarded costs and attorney fees to Johnson and Hanson. The state objected to the award below and raises that issue again on appeal.
A trial on the merits was held before the district judge, who found that the majority of the exhibits introduced by the state were obscene. The court entered judgment accordingly and enjoined the remaining defendants from further sale and/or exhibition of any of the materials found obscene.
The state then attempted to collect the "costs of abatement" pursuant to I.C. § 52-415. The trial court awarded the state only a limited amount for attorney fees, stating, among other things, that the state's attorneys did not keep adequate hourly time records.
The state appeals, contending (1) that the one-year forfeiture or closure order sought by the state is not an unconstitutional prior restraint upon free speech; (2) that the trial court's reduced award for abatement costs against the remaining defendants was in error; and (3) that it was error for the court to grant costs and attorney fees to dismiss defendants Hanson and Johnson. The trial defendants cross-appealed, alleging that the state was not entitled to any abatement costs.

I
Before turning to the merits, it is essential that we articulate the limited context in which defendants' first amendment claim comes to this Court. The sole constitutional question presented in this appeal is whether a district court may impose a one-year forfeiture of the use of real property upon a finding, made pursuant to constitutionally acceptable procedures, that obscene materials were disseminated on the property. Defendant respondents contend that such a closure order or forfeiture constitutes an unlawful prior restraint upon the exercise of free speech insofar as it affects materials not determined to be obscene. We disagree for reasons set forth later in this opinion.
The defendants do not, however, contest the lower court's finding of obscenity. Nor do they contest the standards which the lower court applied in making that determination. See Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). The fact of obscenity is therefore not an issue in this appeal.
More importantly, this appeal involves no procedural issues. The United States Supreme Court has imposed a number of procedural requirements upon the states' efforts to regulate dissemination of sexually *625 oriented materials.[1]See Vance v. Universal Amusement Co., Inc., 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980); Southeastern Promotions, Ltd., v. Conrad, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); Kingsley Books, Inc. v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957). Idaho's moral nuisance statutes, I.C. §§ 52-401 et seq., contain a relatively extensive and rather complex procedural blueprint for nuisance actions of this type. For purposes of this appeal, we need only observe that the nuisance statutes do not provide for or allow any restraint upon dissemination prior to a judicial determination of obscenity. See State ex rel. Ewing v. "Without a Stitch," 37 Ohio St.2d 95, 307 N.E.2d 911, 914 (1974), dismissed for want of substantial federal question sub nom. Art Theatre Guild, Inc. v. Ewing, 421 U.S. 923, 95 S.Ct. 1649, 44 L.Ed.2d 82 (1975).
We stress the limited scope of this appeal because the United States Court of Appeals for the Ninth Circuit has recently struck down, on procedural grounds, certain Washington moral nuisance statutes identical to Idaho's. Spokane Arcades, Inc. v. Brockett, 631 F.2d 135 (9th Cir.1980). The Ninth Circuit did not reach the issue presented by the instant appeal,[2] nor has, to our knowledge, any United States Supreme Court case.[3] By the same token, we do not reach those procedural issues resolved in Spokane Arcades.[4]

*626 II
In the last few decades, the Supreme Court of the United States has often spoken to the issue of obscenity and the first amendment. Several fundamental principles have emerged. First, and perhaps foremost, obscenity is not protected by the first amendment. E.g., Paris Adult Theater I v. Slayton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Hence, the states have considerable leeway in attempting to regulate the dissemination of sexually explicit materials which are obscene.
"We need not linger over the suggestion that something can be drawn out of the Due Process Clause of the Fourteenth Amendment that restricts New York to the criminal process in seeking to protect its people against the dissemination of pornography. It is not for this Court thus to limit the State in resorting to various weapons in the armory of the law. Whether proscribed conduct is to be visited by a criminal prosecution or by a qui tam action or by an injunction or by some or all of these remedies in combination, is a matter within the legislature's range of choice." Kingsley Books v. Brown, 354 U.S. at 441, 77 S.Ct. at 1327.
It is also clear that the states have the power to punish purveyors of illegal pornography. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); Smith v. People, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959).[5] However, while punishment after the fact is permissible, courts have exhibited a marked dislike for restraining even unprotected obscenity prior to its dissemination. "Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity."[6]Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963). See Vance v. Universal Amusement Co., Inc., supra. Prior restraints upon expression are not absolutely prohibited, however, and, as long as certain procedural safeguards are employed, obscene expression may be enjoined. Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); Kingsley Books v. Brown, supra. See note 1, supra.
While much has been written on procedural requirements in cases involving "prior restraint," very little has been written to define the phrase. To merely label something unconstitutional as a prior restraint is question begging at its best, especially if no analytical effort is made to determine whether the regulation is indeed a prior restraint on free speech.
"The phrase `prior restraint' is not a self-wielding sword. Nor can it serve as a talismanic test. The duty of closer analysis and critical judgment in applying the thought behind the phrase has thus been authoritatively put by one who brings weighty learning to his support of constitutionally *627 protected liberties: `What is needed,' writes Professor Paul A. Freund, `is a pragmatic assessment of its operation in the particular circumstances. The generalization that prior restraint is particularly obnoxious in civil liberties cases must yield to more particularistic analysis.' The Supreme Court and Civil Liberties, 4 Vand.L.Rev. 533, 539." Kingsley Books v. Brown, 354 U.S. at 441-42, 77 S.Ct. at 1327-28.
By way of example, if a bookseller, having fallen behind on his property taxes, loses his bookstore at a tax sale, he will not be heard to complain that the state has imposed an unlawful prior restraint upon his bookselling activities. If that same bookseller is convicted of the crime of distributing obscene materials, he may be imprisoned, and yet he will not be heard to complain that his incarceration constitutes a prior restraint upon his ability to disseminate protected speech, even though it is quite clear that it has that effect.[7]
At the other end of the spectrum is the type of direct restraint found in the always-cited landmark case of Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). The State of Minnesota had commenced a statutory nuisance abatement action against Near and his newspaper, alleging it to be "malicious, scandalous and defamatory." After a trial, the district court found that the defendants did regularly publish a malicious, scandalous and defamatory newspaper, and that such newspaper was therefore subject to abatement as a nuisance. The court also perpetually enjoined the defendants "from producing, editing, publishing, circulating, having in their possession, selling or giving away any publication whatsoever which is a malicious, scandalous or defamatory newspaper, as defined by law." Id. at 706, 51 S.Ct. at 627. The Supreme Court held, of course, that such an injunction constituted an impermissible prior restraint. The Court placed much emphasis on the fact that the object of the Minnesota statute was to suppress the offending newspaper and to censor the offending publisher.
There are a number of distinctions between the Near case and the previously cited hypothetical examples, not the least of which is the fact that Near dealt with speech critical of public officials rather than speech of a sexual nature. Most significantly, however, the Near injunction against prospective publication was based on the content of such publication. In the case of tax sales and imprisonment for violation of criminal obscenity statutes, the incidental restraint on future expression is not based on the content of that expression.[8]
"[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter or its content... . The essence of this forbidden censorship is content control. Any restriction on expressive activity because of its content would completely undercut the `profound national commitment to the *628 principle that debate on public issues should be uninhibited, robust, and wide open.'" Police Dept. of Chicago v. Mosley, 408 U.S. 92, 95-96, 92 S.Ct. 2286, 2289-2290, 33 L.Ed.2d 212 (1972), quoting New York Times Co. v. Sullivan, 376 U.S. 254, 270, 84 S.Ct. 710, 720, 11 L.Ed.2d 686 (1964). (Emphasis added, citations omitted.)
The one-year forfeiture provision of the Idaho moral nuisance statute avoids the particularly noxious specter of content control. Like a tax sale, the forfeiture is directed strictly at property, apart from the content of any expression contained therein. And like imprisonment for a criminal obscenity transgression, the forfeiture is intended to penalize past distributions of illegal and unprotected obscenity. The legislature could just as easily have imposed a fine or other property-related penalty. Instead, the legislature chose to punish the violator by temporarily depriving him of the property which was used in committing the violation.
The state's authority to impose property related sanctions in civil actions is well established. In modern times, the most prevalent example of this type of in rem action can be found in statutes imposing forfeitures upon vehicles and vessels used to transport contraband drugs. E.g., 21 U.S.C. § 881(a); 49 U.S.C. §§ 781, 782; I.C. § 37-2744. See Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). Forfeiture is not limited to property used in drug crimes, however. "[C]ontemporary federal and state forfeiture statutes reach virtually any type of property that might be used in the conduct of a criminal enterprise." Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. at 683, 94 S.Ct. at 2091. See State v. 36 Pinball Machines, 222 Kan. 416, 565 P.2d 236 (1977). In Calero-Toledo, the Supreme Court of the United States upheld a long line of prior decisions which held that forfeiture statutes, although admittedly harsh, do not impose an unconstitutional taking of property without just compensation, even though the property itself is capable of innocent use, and even though the forfeiture may enmesh the property interests of innocent owners, lessors, lenders, bailors or secured creditors. The government's authority to impose a forfeiture extends even to real property. See United States v. Stowell, 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555 (1890); Dobbin's Distillery v. United States, 96 U.S. 395, 24 L.Ed. 637 (1878); 26 U.S.C. § 5615(3) (imposing forfeiture of real property upon which unlawful distillery is operated).
The purpose of statutory forfeitures is obvious: to punish and to deter. As the Calero-Toledo Court observed, statutory forfeitures punish "by imposing an economic penalty, thereby rendering illegal behavior unprofitable." Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. at 687, 94 S.Ct. at 2094. That is the manifest purpose of Idaho's one-year closing provision; not to prevent future expression, but to punish past illegal conduct by depriving the violator of economic gain. That is a permissible state objective, implemented by permissible means.
The state's position in this case is further buttressed by reference to two other Supreme Court cases. The first is Art Theater Guild, Inc. v. Ewing, 421 U.S. 923, 95 S.Ct. 1649, 44 L.Ed.2d 82 (1975), which dismissed an appeal from State ex rel. Ewing v. "Without a Stitch," 37 Ohio St.2d 95, 307 N.E.2d 911 (1974), for want of a substantial federal question. The Ohio Supreme Court had ruled that a one-year closure provision much like Idaho's was a constitutionally permissible method of controlling obscenity. The Supreme Court's subsequent dismissal is significant. As the case of Hicks v. Miranda, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), makes clear, a dismissal for want of substantial federal question must be considered a ruling on the merits by the United States Supreme Court. Thus, the high Court has placed its implicit imprimatur on a nuisance clause provision virtually identical to Idaho's, thereby refuting defendants' contention that imposition of any closure order constitutes an unlawful prior restraint.
*629 The second case is Young v. American Mini Theatres, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). In Young, the Court held that local governments may regulate obscenity by zoning laws. The Court specifically held that a zoning ordinance which imposed a licensing requirement upon adult motion picture theaters did not constitute an impermissible prior restraint upon free speech. The Court remarked:
"The ordinances are not challenged on the grounds that they impose a limit on the total number of adult theaters which may operate in the city of Detroit. There is no claim that distributors or exhibitors of adult films are denied access to the market, or, conversely, that the viewing public is unable to satisfy its appetite for sexually explicit fare. Viewed as an entity, the market for this commodity is essentially unrestrained." Id. at 62, 96 S.Ct. at 2448 (emphasis added).
The Court's reasoning applies to the instant case. The defendants are not denied access to the market, nor are they absolutely restrained from selling any sexually explicit materials other than those specifically adjudicated to be obscene. The closure order imposes as a sanction only a temporary forfeiture on a specific piece of property found to be directly related to past violations of obscenity law. Like the theater owners in Young, the defendants in this case are free to conduct their business elsewhere.[9]
We therefore conclude that, under the circumstances of this case, a one-year closure or forfeiture order does not by itself constitute an unlawful prior restraint upon the exercise of free speech.[10] Our conclusion is based on the following: the extensive power of the state to impose a forfeiture on neutral and innocent property used in the commission of forbidden acts; the power of the state to impose sanctions of its choice upon those who disseminate unprotected obscenity; the fact that the forfeiture or closure order is not directed at any speech or publication, but is instead aimed at the real property apart from the content of expression contained therein; and the fact that the defendants remain free to disseminate any materials, except those already determined to be obscene, at any other location, subject of course to further penal actions by the state should the defendants again violate laws regulating obscenity. Again, our conclusion is premised on the fact that, as shown by the record below, the one-year closure would be imposed only after a judicial determination of *630 obscenity made pursuant to constitutionally acceptable procedures.

III
The remaining issues relate to attorney fees and abatement costs. Defendants Hanson and Johnson, owners and lessors of the Niks & Naks property, were awarded attorney fees as prevailing parties after they were dismissed from the case due to the lower court's ruling on the constitutional issue. Today's opinion reverses that ruling, and thus at this point Hanson and Johnson are no longer prevailing parties. Therefore, that award is set aside. Any award of attorney fees to either party must await the final outcome of this case on remand.
The state also contends that the trial court's award of attorney fees and abatement costs pursuant to I.C. § 52-415 was insufficient. We agree for several reasons.
Firstly, although several other moral nuisance provisions may be penal in nature, the provision relating to recovery of abatement costs, I.C. § 52-415, is clearly remedial. As such, it should be liberally construed with a view to effect its manifest objectives. E.g., Doggett v. Electronics Corp. of America, 93 Idaho 26, 454 P.2d 63 (1969). See I.C. § 73-102.
Secondly, the court below denied the state virtually all of its request for attorney fees on the grounds that it did not keep hourly time records. The introduction of hourly time sheets into evidence is not a prerequisite to an award of reasonable attorney fees. See Realty West, Inc. v. Thomas, 95 Idaho 262, 506 P.2d 830 (1973); Dykstra v. Dykstra, 94 Idaho 797, 498 P.2d 1270 (1972). Cf. I.R.C.P. 54(e)(3) (amount of time spent is but one of several factors to be considered in awarding attorney fees). I.C. § 52-415 contains a clear legislative directive that obscene materials are to be abated. Upon entry of judgment against defendants in legal proceedings brought pursuant to the moral nuisance statutes, not only are the gross profits ("the fruits of [the] unlawful enterprise") to be forfeited, but also the full costs of abatement, including but not limited to investigative costs, court costs, reasonable attorney fees, and costs on appeal, are to be charged to the defendants against whom a judgment is entered. The trial court's nominal award of attorney fees, and denial of other abatement costs including investigative costs, printing costs, and the like, is not in keeping with the legislative policy set out in I.C. § 52-415.
The trial defendants argue that the state should not be awarded any attorney fees. They maintain that the state accrued no fees, inasmuch as it was represented by staff attorneys. That argument has been previously rejected by this Court. James v. Dunlap (In re Dunmire), 100 Idaho 697, 604 P.2d 711 (1979). See Futrell v. Martin, 100 Idaho 473, 600 P.2d 777 (1979).
The trial defendants also contend that I.C. § 52-415 violates the equal protection clause because it awards abatement costs only to a prevailing plaintiff. A statute providing an award of attorney fees only to the prevailing plaintiff does not violate equal protection principles where, as here, the award furthers a legitimate governmental objective. See Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978); Harrington v. McCarthy, 91 Idaho 307, 420 P.2d 790 (1966); Hindman v. Oregon Short Line RR. Co., 32 Idaho 133, 178 P. 837 (1918). See generally, Annot., 73 A.L.R.3d 515 (1976).
The judgment of the district court is therefore reversed and remanded for further proceedings consistent with this opinion. Costs on appeal are awarded to plaintiff State of Idaho against all defendants. Attorney fees on appeal are awarded pursuant to I.C. § 52-415 to the State of Idaho against all defendant appellants.
McFADDEN, BISTLINE and DONALDSON, JJ., concur.
*631 SHEPARD, Justice, concurring in part and dissenting in part.
I concur with the majority opinion except that portion thereof in which the trial court's award of attorney's fees and abatement costs is ruled insufficient and reversed presumably for the award of additional attorney's fees and abatement costs. As indicated by the majority opinion, a portion of the trial court's ruling appears to be that the State prevailed only as to a portion of its entire case. Hence, I would believe that I.R.C.P. 54(e)(1) as it relates to a trial court's determination of the "prevailing party" in accordance with I.R.C.P. 54(d)(1) constitutes sufficient authority upon which to uphold the trial court's ruling.
NOTES
[1] According to the Court, there are three fundamental procedural requirements which must be met prior to the imposition of any restraint upon the dissemination of obscenity. "First, the burden of instituting judicial proceedings, and of proving that the material is unprotected, must rest on the censor. Second, any restraint prior to judicial review can be imposed only for a specified brief period and only for the purpose of preserving the status quo. Third, a prompt final judicial determination must be assured." Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 560, 95 S.Ct. 1239, 1247, 43 L.Ed.2d 448 (1975). See L.Tribe, American Constitutional Law § 12-36, at 734-36 (1978). The appellants have not alleged that any of the above requirements were not met.
[2] "The ability of a court to close a place temporarily because obscene materials may have been sold, distributed, or exhibited on the premises is an impermissible prior restraint. We express no opinion with respect to what circumstances, if any, would justify a closure subsequent to a determination that conforms in all respects to the First Amendment." Spokane Arcades, Inc. v. Brockett, 631 F.2d at 139.
[3] In its most recent obscenity case, Vance v. Universal Amusement Co., Inc., 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980), the Supreme Court came close to, but did not decide, the issue presented by this appeal. In Vance, the Court examined the constitutionality of certain Texas nuisance abatement statutes. Although the Texas statutes did contain a one-year closure provision, the Fifth Circuit Court of Appeals construed that provision to apply only to certain common nuisances such as gambling and prostitution. On appeal, the Supreme Court accepted the Fifth Circuit's construction. It was therefore unnecessary for the Court to determine whether a one-year closure order could be imposed in an obscenity nuisance action.

Although the Supreme Court has never expressly confronted this issue, it may nonetheless have implicitly approved of one-year closure orders in obscenity cases. See State ex rel. Ewing v. "Without a Stitch," 37 Ohio St.2d 95, 307 N.E.2d 911 (Ohio 1974), dismissed for want of substantial federal question sub nom. Art Guild Theatre, Inc. v. Ewing, 421 U.S. 923, 95 S.Ct. 1649, 44 L.Ed.2d 82 (1975). The significance of that decision will be discussed later in the opinion.
[4] Our citation to the Spokane Arcades case should by no means be equated with approval. Indeed, it appears that the Spokane Arcades panel made little effort to construe Washington's statute in a constitutional manner. For example, in holding that the Washington nuisance abatement statutes were procedurally deficient, the panel listed four supposed defects, without once considering any alternative constitutional constructions. A statute must be construed in a constitutional sense where reasonable and practicable to do so. U.S. Civil Service Commission v. Natl. Ass'n of Letter Carriers, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); United States v. Vuitch, 402 U.S. 62, 91 S.Ct. 1294, 28 L.Ed.2d 601 (1971); State v. Rawson, 100 Idaho 308, 597 P.2d 31 (1979). It seems clear that some, if not all, of the purported procedural defects identified in Spokane Arcades may be cured by appropriate construction. See United States v. Thirty-Seven (37) Photographs, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971); Grove Press, Inc. v. Flask, 326 F. Supp. 574 (N.D.Ohio 1970), vacated 413 U.S. 902, 93 S.Ct. 3026, 37 L.Ed.2d 1013 (1973); General Corp. v. State ex rel. Sweeton, 294 Ala. 657, 320 So.2d 668 (1975), cert. denied 424 U.S. 904, 96 S.Ct. 1494, 47 L.Ed.2d 753 (1976); State ex rel. Ewing v. "Without a Stitch," 37 Ohio St.2d 95, 307 N.E.2d 911 (1974), dismissed for want of substantial federal question sub. nom. Art Guild Theatre, Inc. v. Ewing, 421 U.S. 923, 95 S.Ct. 1649, 44 L.Ed.2d 82 (1975). In fact, the record in this case reflects that the district court avoided some procedural problems by imposing appropriate savings constructions upon the Idaho nuisance statutes. Therefore, the Spokane Arcades decision may not be entitled to great precedential value.
[5] In Smith, the Supreme Court required some form of scienter as an element of proof in a criminal obscenity prosecution. Other courts have construed the Smith ruling to require proof of scienter in civil obscenity actions of a punitive nature. Grove Press, Inc. v. Flask, supra; State ex rel. Ewing v. "Without a Stitch," supra. That issue was not raised on this appeal, and thus we do not decide it.
[6] "Behind the distinction is a theory deeply etched in our law: a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand. It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable." Southeastern Promotions, Ltd. v. Conrad, 420 U.S. at 558-59, 95 S.Ct. at 1246-47.
[7] In upholding a similar one-year closure provision, a Michigan court remarked,

"Persons convicted of violating this state's criminal obscenity law ... are subject to imprisonment for a period of time not to exceed one year. No one could seriously argue that the statute, insofar as it provides for imprisonment, constitutes a prior restraint on a person's first amendment rights simply because during the period of incarceration that person could not show movies he otherwise might have. We can see no difference here, particularly in light of the fact that a sanction less severe than a deprivation of personal liberty is involved." State ex rel. Cahalan v. Diversified Theatrical Corp., 59 Mich. App. 223, 229 N.W.2d 389, 396 (1975) (citations omitted), rev'd on other grounds, 396 Mich. 244, 240 N.W.2d 460 (1976).
[8] The typical prior restraint case deals with the government's effort to censor future expression based on its content. See, e.g., Nebraska Press Ass'n v. Stewart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); New York Times Co. v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971); Organization For a Better Austin v. Keefe, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971); Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963).
[9] Other courts have relied upon this fact in upholding similar closure provisions.

"Defendants' arguments in this regard fail to recognize ... that the sanctions of the statute are imposed, after a full hearing in court, because of past exhibitions and not because of what may or may not be shown in the future. Indeed, the sanctions imposed by the statute do not restrict the right of defendants herein to legally exhibit films not yet declared obscene. The sanctions simply prohibit the defendants from doing so in these particular buildings. The statute simply imposes a sanction for past acts and affects the right of the owners and operators to exhibit future films only insofar as it precludes them from doing so in these buildings." State ex rel. Cahalan v. Diversified Theatrical Corp., [59 Mich. App. 223,] 229 N.W.2d at 396.
"[W]hile appellants are arguably denied their right of First Amendment expression to some extent, they are denied such right only upon the specific property here involved and only for a limited period of time. They are in the meantime free to exercise their First Amendment rights at any other place." People ex rel. Hicks v. "Sarong Gals," 42 Cal. App.3d 556, 117 Cal. Rptr. 24, 28 (1974). See also People ex rel. Sorenson v. Randolph, 99 Cal. App.3d 183, 160 Cal. Rptr. 69 (1979).
[10] We come to this conclusion fully aware that a number of states have held that closure provisions constitute improper prior restraints. General Corp. v. State ex rel. Sweeton, 294 Ala. 657, 320 So.2d 668 (1975), cert. denied, 425 U.S. 904, 96 S.Ct. 1494, 47 L.Ed.2d 753 (1976); People ex rel. Busch v. Projection Room Theatre, 17 Cal.2d 42, 550 P.2d 600 (1976), cert. denied, 429 U.S. 922, 97 S.Ct. 320, 50 L.Ed.2d 289 (1976); Sanders v. State, 231 Ga. 608, 203 S.E.2d 153 (1974); State v. A Motion Picture Entitled "The Bet," 219 Kan. 64, 547 P.2d 760 (1976); Gulf States Theatres of Louisiana, Inc. v. Richardson, 287 So.2d 480 (La. 1973); State ex rel. Andrews v. Chateau X, Inc., 296 N.C. 251, 250 S.E.2d 603 (N.C. 1979), vacated 445 U.S. 947, 100 S.Ct. 1593, 63 L.Ed.2d 782 (1980).