MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v. JAMES H. HAWKINS.

Decided April 4, 1908.

**1.—Pleading—Overruling Exception—Harmless Error.**

Overruling an exception to a count in a petition becomes harmless error, if error at all, when the court by its charge expressly withdraws the issues presented by such count from the consideration of the jury.

**2.—Damages—Injuries to Wife—Husband May Sue—Pleading.**

The husband has a right to sue for injuries to his wife. In a suit by a married man against a railroad for damages for rough handling of the corpse of his child, it is not error for the court, in the absence of exception to the petition or objection to the evidence, to authorize a recovery by the plaintiff, for mental suffering on the part of his wife, although the petition did not expressly allege that she was a party to the contract for the shipment of the corpse, or that she sustained any relation to the child. The act was a wrongful one by which she was injured, and for which a recovery could be had.

**3.—Carrier—Injury to Corpse—Liability.**

In a suit against a railroad company for damages for rough and negligent handling of a corpse during transportation over its road, evidence considered. and held to support a verdict for $1,425.

**4.—Verdict by Lot—Test Rule.**

Where, during their deliberations, the jury agree that each member should name an amount, that the sum of the amounts should be divided by twelve, and the result should be the basis for reaching a verdict, and afterwards adopt such result as their verdict, the verdict is not a gambling verdict. The test in such cases is, did the jury agree beforehand to be bound by the result? If so, the verdict should be set aside; otherwise it should not.

Appeal from the District Court of Hunt County. Tried below before Hon. R. L. Porter.

*Coke, Miller & Coke* and *John T. Craddock,* for appellant.—The charge is erroneous in authorizing a recovery of damages for injuries to the feelings of appellee's wife, because it is not alleged in the petition, that she was in any way a party to the contract for the transportation of the corpse of the child, nor that appellant knew of her relation to the deceased, nor that it knew she sustained any

relation to the transportation of the corpse of the child.  Under the allegations of the petition and the evidence, the mental anguish and suffering of the appellee's wife were not such as were in the reasonable contemplation of the appellant as a probable consequence of the breach of the undertaking of the appellant to safely deliver the corpse at Greenville, nor such as ought reasonably to have been foreseen and anticipated as the probable result of the injuries to the box, casket and corpse.  Wells Fargo Express Co. v. Fuller, 4 Texas Civ. App., 223.

The verdict of the jury should have been set aside and a new trial granted, because the verdict, as found, was not the result of a fair and impartial deliberation of the jury, but was arrived at by lot and was a gambling verdict.  22 Enc. Pleading & Practice, p. 855-57; Hauk v. Allen, (Ind.), 11 L. R. A., 706; Dixon v. Pluns, (Cal.), 20 L. R. A., 698; Chicago & I. C. Railroad Co. v. McDaniel, 134 Ind., 166, (32 N. E., 728); Williams v. State, 15 Lea, 129, (54 Am. Rep., 404); Johnson v. Husband, 22 Kan., 277.

It is contemplated by the law that the verdict of a jury shall be the result of sound judgment, deliberate consideration and conscientious conviction.  "Nothing short of a free and deliberate finding made upon a conscientious conviction of the judgment of the jurors will satisfy the law."  Merseve v. Shine, 37 Iowa, 253.

Since the passage of the Act of February 24, 1905, the evidence of the jurors themselves upon a motion for new trial is competent to impeach their verdict; and if under the evidence submitted upon such motion the misconduct proven be material it is the duty of the court to set the verdict aside.

*B. Q. Evans,* for appellee.

RAINEY, Chief Justice.—This suit was brought by appellee Hawkins against the appellant railway company to recover damages for injuries to the feelings of Hawkins and wife on account of the negligent handling by the railway company of the corpse of the infant child of Hawkins and wife, which was being shipped from Caney, Indian Territory, to Scurry, Kaufman County, Texas, for the purpose of burial, and for delay in reaching Scurry at the time appointed for the burial.

The railway company answered by general and special demurrers, general denial and contributory negligence, in that the box which contained the casket had the appearance of ordinary baggage or a box containing household goods and furnished no indication that it contained a corpse, and if there was any delay in the continuation of their journey it was occasioned by the negligent act of plaintiff in placing the casket in such a box, etc.  The demurrers were overruled, exceptions taken and a trial resulted in a verdict and judgment for plaintiff.  The railway company appeals.

The evidence shows that plaintiff delivered to the railway company the corpse of his two months old infant at Caney, Indian Territory, for transportation to Scurry, Kaufman County, Texas, for the pur-

pose of burial. The corpse had been placed in a casket, which was enclosed in a plain wooden box securely nailed, on which a certificate was placed showing it to contain a corpse. Plaintiff bought tickets for himself, wife and their two children and the corpse, all of whom took passage on the same train with the corpse. When the train reached Greenville, Texas, where a change had to be made to the Midland Railroad, the plaintiff and family left the car in which they were riding and went toward the baggage car to look after the corpse. When they got near they saw the box containing the corpse standing on one end in the door of the car, and then an employe turned it out and it hit the trucks and fell to the ground, bursting the box open. The employe picked it up and placed it on the truck. The plaintiff walked up about the time he got it on the truck and said, "For God's sake man, don't tear it all to pieces." The employe said, "I declare! this is a corpse ain't it?" What afterwards transpired and the injury to the corpse is shown by plaintiff's testimony as follows: "When I noticed the box, when this man put it back on the trucks, the plank on the left side from me was out this way (indicating) and the lid was torn off, and there was a piece split off the top of the lid about that long (indicating about one foot), where the nails were drove in, and was a piece knocked 'out at the end. I didn't notice either one of these pieces. At the other end of the box the plank was turned out the other way. And I walked up and carried my wife and children in the sitting room and they sit down on a bench next to the door, and I goes back out there and tried to straighten it myself, and seen I could not straighten it myself. Had nothing to straighten it with there, and I got out there and seemed like I could not see anything more; got all choked down and could not talk or see anything. I stood there a little bit and stepped back to the door and stood there, I reckon somewhere about a minute, and I came on back to the house (meaning the waiting room), not knowing what to do. They left the box sitting there a little bit, on the trucks, and the train run on off. I sorter stood around there a little bit, and didn't know hardly what to do, and I thought to myself I would have to fix it or get another box, because they would not receive it all torn up on the other road, and I stood around there, not knowing what to do, for some bit. Then I come off to town to get another box, and got another one. When I got back up there (meaning the depot) they had rolled it off into the express room, or baggage room, and locked it up. Then I stayed around there some bit and then this gentleman came down there and seen me about the box. He brought one up there, and they rolled it out (meaning the corpse) just a little before he brought it, and they rolled it up just before he came up, and I was out there with it, and he brought the other box, and I had two women to straighten it up and fix it up. When they put it out there (meaning when the corpse was rolled out of the baggage room) the baggage man come out there and says: 'I want that ticket for this corpse.' Had a check for it just like I would have for a box. I says, 'All right sir, you could have had it some bit ago, if I had thought of it, but not thinking anything about it I kept it

in my pocket.' I turned and went back, and there was two women standing there, and I asked them if they would straighten up my child in the box and see whether it was turned over or not, and they said they would do the best they could. The oldest lady came up to the head end of the box, and her daughter, I reckon, anyhow the youngest, she came up by the side of the box and tried to get it undone. Was one of the screws broke off right on the side of the coffin, and I went to work then and tried to get that screw out and come to find out it was pulled out on the inside of the coffin and was lost on the inside of the coffin, and the old lady raised two screws, I· believe, on the left hand side of me, where I was standing at the foot, and I just lifted the lid off, and when I did that it (meaning the corpse) was all down underneath the bed. The bed on top of it. The cotton on top of it, and all crammed in the corner like of the box, and the old lady reached down in that way and pulled the little bed off of it, and pulled the little fellow out and commenced pulling the cotton out, and the old lady put it back down, and she laid it back down on the little bed in the box. They worked to try to straighten it up and I seed its mouth all white and open and its eyes stuck out this way, and I was standing looking at it, and she turned around and said to my wife—and asked for a handkerchief, and said she wanted to tie its head up. I reached in my pocket and had a couple of handkerchiefs, and gave her one to tie its head up, and she put it around its little jaws like this and tied it up. I turned around then and picked up the lid there off the trunk; was sitting on a trunk, and started to cover it up, and noticed its little eyes was sticking out, and I just stopped and laid the lid on the lower end of the box and taken my finger and mashed its little eyes back the best I could myself, and then caught that right under, like this (hands on each side of head to mash it in) and seemed like it was broke here (meaning the temple), and then the handkerchief didn't come over the head right, to hold the jaw up, and I commenced to place it here, and found this side of the little head,· right side, bruised up where it was turned over in the box, and I taken my finger and pushed its eyes back the best I could, at that time my wife was standing back behind me, against the box. She had turned off. I could not tell the jury how I felt about the matter. Felt awful miserable. Would not had it in that fix for nothing at all. Could not have hired me to have put it in that fix. My wife was present when the coffin was opened by these people and when they opened it and pulled it out from under the bed, under the cotton, when she walked up and saw the condition it was in, she throwed her hands up and turned around to where a goods box was lying there and said. 'Lawsy Mercy,' and commenced crying. When they taken the child out of there and when they pulled it up to straighten it, I saw the shape it was in and it seems like to me I can never get my mind off of the way it was all mashed up, and the shape it was in ·when they taken it out of that box, from under the little bed, has been· on my mind ever since."

The first, second and third assignments of error complain of the action of the court in overruling special exceptions to that portion

of plaintiff's petition which alleged damages by reason of the postponement and inconvenience incident to the delay in the burial of said corpse. The court in its general charge limited a recovery to the injury resulting from the negligence and carelessness of defendants' servants in throwing said box from the baggage car and in injuring the corpse, and charged the jury "you will not consider any evidence that has been admitted before you for any purpose on the issue made by the pleadings with reference to any delay, if any, in the burial of said corpse."

Besides, the court gave a special charge requested by appellant, which reads: "If you should find for the plaintiff under the charges given you by the court, then you are instructed that you can not allow the plaintiff anything for the delay and postponement, if any, of the burial of the child at Scurry, in Kaufman County, and you will therefore, if you should find for the plaintiff, exclude from consideration any mental suffering of himself or wife brought about by such delay and postponement of the burial of the child at Scurry, if there was any suffering." If there was error in overruling the demurrers as complained of, it was cured by the court giving the charges mentioned, as it will be presumed the jury obeyed the instructions of the court and did not consider the question of delay in rendering their verdict. Weaver v. Nugent, 72 Texas, 272; Turner v. Farbin, 7 Texas Ct. Rep., 443.

The fourth and fifth assignments of error complain of the charge of the court because it authorizes a recovery for injuries to the feelings of appellee's wife, when the petition fails to allege that she was in any way a party to the contract for the transportation of the corpse of the child, or that she sustained any relation to the child, or to the transportation of said corpse, and that her mental suffering was not in contemplation as a probable breach of said contract, or such as ought reasonably to have been foreseen and anticipated as the probable result of the injuries to the corpse.

Plaintiff alleged in his petition that he was a married man with several children; that he purchased from the ticket agent at Caney, Indian Territory, tickets for himself, two children and the corpse. That plaintiff and his wife and two children boarded one of the passenger trains on said road and became and were passengers on the defendant's train and entitled to transportation to Greenville. The petition also alleges the suffering and distress of himself and wife and prays damages therefor.

There was no exception to the pleading on the ground that no recovery could be had for the wife's suffering, nor was there any objection to the evidence in this respect. The evidence shows that the wife accompanied the plaintiff as a passenger on the ticket purchased for her by him at Caney to Greenville, and was present at the depot when the injury was done. The husband has the right to sue and recover for injuries to the wife. He was acting for her, as well as for himself, in buying the tickets and arranging for the transportation of the corpse. She was accompanying him as a passenger on their sad errand, and under the circumstances we think she sustained such relation to the transportation of the corpse

that a recovery for her suffering was warranted. But if it could be said that no such relation as to the transportation existed as to her, the act was a wrongful one by which she was injured and for which a recovery could be had.

Quoting from Sutherland on Damages, p. 92: "The wrong-doer is answerable for all injurious consequences of his tortious act which, according to the usual course of events and general experience, were likely to ensue and which therefore when the act was committed he may reasonably be supposed to have foreseen and anticipated." The suffering of the wife and mother for the injury to the corpse of her child was most natural, and when such an act is committed the law will hold that the suffering could have been foreseen and anticipated.

The court did not assume 'in its charge that the box was roughly handled, but left it to the jury to determine that issue from the evidence. So there is no merit in the objection to the fifth paragraph of the court's charge on this score.

Complaint is made of the overruling by the court of the motion for a new trial, because the verdict of the jury is excessive in amount, in that "it was shown that the infant whose corpse was being shipped was less than two months old; that it was placed in an ordinary rough pine box, bearing no indication from the outside of the box that it contained a corpse," and defendant's servants were led to believe it contained ordinary household goods or baggage, etc. This matter has been passed upon by the jury, and their verdict is supported by the evidence. There is no error on this ground.

The verdict is also attacked on the ground that it was arrived at by lot and was a "gambling verdict." There was evidence tending to show that the jury agreed to write the amount each was willing to assess, then add said amounts together, divide by twelve and the result would be their verdict, that is, that they agreed beforehand that the sum thus obtained should be their verdict. On the other hand, there was evidence tending to show that the agreement was for each to name a sum, which sums were to be added together, and the result of the division by twelve should form the basis for reaching a verdict. That afterward they finally agreed upon the sum reached by said division, but that no agreement was made before said division that said sum should be the verdict.

Article 1371, Rev. Stats., (as amended by Acts, 1905, page 21) in reference to the misconduct of the jury, provides, among other things, "and if the misconduct proven, or the testimony received, or the communication made, be material a new trial may, in the discretion of the court, be granted." From the testimony of the only juror who testified on the question we think the court did not abuse his discretion in overruling the motion for a new trial. The test in such a case is, did the jury agree to be bound beforehand by the result of such proceedings, if so, the verdict will be set aside. But if the result was reached and no agreement had beforehand to abide by it, and it was afterwards agreed upon as their verdict, it will be sustained. Handley v. Leigh, 8 Texas, 129; Leverett v. State, 3 Texas Crim. App., 213, and authorities there cited.

The evidence is ample to justify the verdict and the judgment is affirmed.

*Affirmed.*

### ON REHEARING.

In our original opinion we stated that "only one juror testified" on the hearing of the motion for a new trial before the court. In this we were mistaken. Two jurors testified, but this does not change the result of the case. The motion for rehearing is overruled.

*Overruled.*

Writ of error refused.