Sidney Squire, J.
The claimant is the widow of Antonio Torres. As the decedent’s next of kin, she sues the State of New York for $51,000 for acts of its employees at the Pilgrim State Hospital, owned and operated by the defendant. She claims (a) $50,000 for her personal suffering and mental anguish resulting from an autopsy and burial, both unauthorized, and (b) $1,000 for the required disinterment and reinterment of the decedent.
On or about January 1, 1958 Antonio became a patient at Bellevue Hospital, owned and operated by the City of New York. The patient was visited there a number of times by the claimant, their children and others.
On March 4, 1958, an order of certification was signed by a Justice of the Supreme Court of our State, directing that the decedent be admitted to Pilgrim State Hospital at Brentwood, Long Island, for observation and treatment for a period not exceeding 60 days.
The patient was admitted at said State Hospital on March 10, 1958. Bellevue Hospital informed the State Hospital that the name - and address of the patient’s nearest known relative was the claimant, Isabel Torres, of “ 1658 Washington Avenue, Bronx, N. Y. C.” Antonio continued at the State Hospital until March 23,1958 when he expired.
On said date, two telegrams were sent by the Director of the hospital to the claimant at said address. The first, at 6:50 p.m., said: 11 ANTONIO torres critically ill call hospital for *490 details”. The second, at 9:50 p.m., read: “Antonio Torres passed away. Will notify you when to send undertaker”. Neither of these two missives was received by the addressee. The telegraph company notified the hospital that both messages were undelivered because the lady was “ unknown ” there.
The hospital’s “ P. O. T. Form 30 ”, filled in and signed by an information clerk on March 27, 1958 at 2:55 p.ms., states in part “ Death let. sent 3/24/58 no reply as yet. Pt has no funds.” Beneath that, the same form .shows that permission for autopsy was not granted but that thereafter, at 8:30 a.m. of March 28, 1958, an Associate Director changed the “ No ” to “ Yes ” and directed that the body be buried in the hospital cemetery. The next entry on that form was filled out by the pathologist evidencing that an autopsy was performed on March 28, 1958, The interment took place in the hospital cemetery on the same day.
Two days later, when the claimant and others came to the hospital to visit the decedent, she was informed for the first time that the gentleman had died. It is undisputed that no member of the family had consented to or authorized the autopsy or burial. All of this resulted from the basic fact that the Torres family lived at 1652 Washington Avenue and not 1658 Washington Avenue. At no time had they lived at the latter address.
The question to be determined is whether the State’s efforts to notify the decedent’s family were reasonable and sufficient under the circumstances at bar. We determine that they were not.
Aside from the two telegrams and letter, the State’s only attempts to locate the family were by telephone from the hospital in Brentwood, Suffolk County, to 1658 Washington Avenue in Bronx County. Three telephone calls were made on March 27, 1958. The hospital’s written record demonstrates that the telephone information supervisor was called by an Associate Director. Said record continues (in the third person): “He was told there were two families by the name of Torres in this apartment building and he called both of them. At one number, he got a Spanish speaking lady who could not converse in English. At the other one, he got a small child who said she knew no one by the name of Isabelle Torres or Guzman. A third call to this building got a lady who did not know her but who promised to ask around the building to see if anyone knew her ”.
The same hospital record has the following entry for the succeeding day, March 28, 1958: ‘ ‘ Since no further word was *491 heard from the wife, patient was today buried in' the hospital cemetery.”
Two days later, the family came to visit the patient. Then for the first time did they (including claimant) learn that the decedent was dead and had been buried, without their knowledge, consent or acquiescence. The claimant was shocked and sustained anguish.
As part of its defense to the causes of action herein, the State relies upon General Order No. 18 of the Mental Hygiene Department. These general orders relate to the management of State hospitals and were promulgated by the Commissioner of Mental Hygiene pursuant to section 7 of article 2 of the Mental Hygiene Law. Said General Order No, 18 is headed “ Autopsies ” and pertinently provides:
“ The director of a state institution is permitted under section 316 of the public health law to autopsy the body of a patient upon complying with the following procedure:
“a. If a deceased patient has next of kin, the director or his representative should exert every effort to notify such kin of the death and of the fact that an autopsy will be performed unless the body is claimed or objection is made to such autopsy within 48 hours from the time of death of such patient.
“ Such notification may be given by telephone, telegram or local police, whichever means is more practicable. Whenever it is possible written consent to autopsy the body should be secured. If consent is obtained by telephone, the conversation should be witnessed by another employee of the institution and then reduced to writing and sworn to by said witness for evidential purposes.
‘ ‘ b. Should there be no known next of kin or should the next of kin fail to respond to the notice sent, preferably after verification of delivery in the case of a telegram, an autopsy may be performed upon the body following the 48-hour period from the time of death.”
Under the circumstances at bar, the State’s endeavors herein were insufficient, inadequate and ineffective. No one ever called on or telephoned the Bellevue Hospital. (Mail had been received from said hospital by the decedent’s family addressed to the correct street number, 1652 Washington Avenue, The Bronx, N. Y. C.) The Police Department of the city was not requested by the State to locate this family.
Moreover, Pilgrim State Hospital is part of the State’s Department of Mental Hygiene. At that time, as the State’s only witness admitted, the department had “ Special Agents ” *492 at 270 Broadway in New York City, whose services could have been utilized in an endeavor to locate the decedent’s family. No recourse was had to said employees.
Accordingly, the State is liable to the claimant for her consequent mental suffering and must also respond in damages for the pecuniary consequences.
The law with respect to such mental suffering was succinctly stated and collated by my colleague, Judge Melvin H. Osterman, in Lott v. State of New York (32 Misc 2d 296). I agree with the legal principles and reasoning enunciated therein.
For the temporary deprivation of the right to the gentleman’s body, the unauthorized autopsy and unjustified burial, claimant has been damaged to the extent of $2,000.
In addition, the claimant’s damages include the following items as to which the respective reasonable values are: Disinterment, $75; the difference between the fair cost of a sealer casket with metal inside and one without such specific container, $85; removal of body from the hospital to New York City, $40, and preparation of the body for burial, $30, aggregating $230 plus New York City Sales Tax of $11.25 (on the $85 item), making the sum of $241.25. The defendant is liable to the claimant for said total damages of $2,241.25.
The motions of the defendant (on which decisions were reserved during the trial), to dismiss this claim, are denied.
The parties waived submission of proposed decisions.
The Clerk is directed to enter judgment herein in favor of the claimant, Isabel Torres, against the defendant, the State of New York, for $2,241.25.