801 P.2d 37

Michael BROWN and Ella Belle Brown, Plaintiffs–Appellants,

v.

MATTHEWS MORTUARY, INC., an Idaho corporation; Aultorest Memorial Corporation, a Utah corporation, a/d/b/a Aultorest Memorial Crematorium, and unknown defendants, Defendants–Respondents.

No. 18116.

Supreme Court of Idaho.

Nov. 15, 1990.

Cox, Ohman & Brandstetter, Idaho Falls, for defendant-respondent Matthews. John Ohman, argued.

Racine, Olson, Nye, Cooper & Budge, Pocatello, for defendant-respondent Aultorest. Cary B. Colaianni, argued.

BOYLE, Justice.

In this appeal from a summary judgment we are called upon to determine whether the trial court correctly ruled that there were no genuine issues of material fact to support plaintiffs' claims for breach of contract, negligent mishandling of a dead body, and the tort of outrage.

Charles Blaine Brown died in a Logan, Utah hospital on June 2, 1984. The day after his death the plaintiffs-appellants Ella Belle Brown, the decedent's wife, and Michael Brown, Ella's and the decedent's son, returned to their home in Montpelier, Idaho where they contacted defendant Matthews Mortuary for the purpose of arranging cremation and a memorial service. Matthews Mortuary informed Ella Brown that it was not licensed to provide cremation services and that the cremation would have to be performed at a crematory. Matthews selected Aultorest Crematorium of Ogden, Utah, a firm with which it had not previously dealt. A memorial service was held without the presence of the cremated remains. Approximately three weeks later Matthews Mortuary delivered to Ella and Michael Brown a plastic box in a brown wrapper containing what was assumed to contain Charles' cremated remains. The box remained unopened for approximately one year, until such time that Michael Brown took the remains to scatter in the Elk Valley area near Montpelier, Idaho. When Michael removed the brown wrapper, the burial transfer certificate located inside bore the name of one Michael Calvin Jackson and it was presumed that the remains in the container were not those of Charles Brown. Subsequent to this discovery, Ella and Michael Brown requested the return of Charles' cremated remains, however they have not yet received them and all parties conclude that his remains have been lost.

Ella and Michael Brown filed a complaint for damages against Matthews Mortuary and Aultorest Memorial Crematorium seeking general contract damages as well as damages for emotional distress based on breach of contract. They also seek damages for the negligent infliction of emotional distress and damages for emotional distress caused by the alleged outrageous conduct of the defendants in the mishandling of Charles' cremated remains.

The defendants-respondents, Matthews Mortuary and Aultorest Memorial Crematorium, (hereinafter "respondents"), filed motions for summary judgment. Portions of the deposition of Ella Brown were appendixed or referred to in the briefs in support of summary judgment submitted by both defendants. No portion of Michael Brown's deposition was before the trial court at the time of the summary judgment proceeding. Ella and Michael Brown filed no opposing affidavits in response to the motion for summary judgment. On the day of the hearing the Brown's counsel filed a "legal memorandum" opposing summary judgment. The respondents moved to strike the Browns' brief as being untimely filed. The district court granted the motion to strike and, after considering the arguments by each party in support of their positions, ruled that there were no genuine issues of material fact and that Matthews Mortuary and Aultorest Memorial Crematorium were entitled to judgment as a matter of law. The district court also held that the claim was pursued frivolously and awarded costs and attorney fees to both respondents.

I.

*Summary Judgment:*
*Standard of Review*

■ "A motion for summary judgment shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c); *Rawson v. United Steelworkers of Am.*, 111 Idaho 630, 726 P.2d

742 (1986); *Schaefer v. Elswood Trailer Sales,* 95 Idaho 654, 516 P.2d 1168 (1973). Standards applicable to summary judgment require the district court and Supreme Court upon review, to liberally construe facts in the existing record in favor of the party opposing the motion, and to draw all reasonable inferences from the record in favor of the nonmoving party. *Tusch Enters. v. Coffin,* 113 Idaho 37, 740 P.2d 1022 (1987); *Doe v. Durtschi,* 110 Idaho 466, 716 P.2d 1238 (1986); *Anderson v. Ethington,* 103 Idaho 658, 651 P.2d 923 (1982); *Kline v. Clinton,* 103 Idaho 116, 645 P.2d 350 (1982); *Palmer v. Idaho Bank & Trust of Kooskia,* 100 Idaho 642, 603 P.2d 597 (1979). If the record contains conflicting inferences or reasonable minds might reach different conclusions, a summary judgment must be denied. *Kline v. Clinton,* 103 Idaho 116, 645 P.2d 350 (1982); *Farmers Ins. Co. of Idaho v. Brown,* 97 Idaho 380, 544 P.2d 1150 (1976); *Stewart v. Hood Corp.,* 95 Idaho 198, 506 P.2d 95 (1973); *Lundy v. Hazen,* 90 Idaho 323, 411 P.2d 768 (1966).

█ Idaho Rules of Civil Procedure 56(b) allows defending parties to present their motion for summary judgment with or without supporting affidavits. In this case Matthews Mortuary, Inc. presented the affidavit of Leonard Matthews in support of their motion for summary judgment. Defendant Aultorest submitted portions of the deposition of Ella Brown as an exhibit. We note that although the deposition of Ella Brown and Michael Brown had previously been taken, I.R.C.P. 30(f)(4), as amended in 1988 requires the parties relying on specific portions of the depositions in support of their position to present or direct the court's attention those portions. With the new amendment to Rule 30(f)(4) depositions are no longer physically filed with the clerk and the trial court is not required to review the entire deposition on a motion for summary judgment. Only those portions of the deposition that are applicable to the existence or non-existance of a genuine issue of material fact need be submitted to the court. In this instant case, the record before the trial court on the defendants' motions for summary judg-

ment consisted only of the pleadings, affidavit of Leonard Matthews and selected portions from the deposition of Ella Brown.

█ Rule 56(e) requires a party to respond to a motion for summary judgment with something more than relying on the mere allegations or denials in the pleadings. Affidavits or other proof must be presented to the court to set forth the specific facts showing that there is a genuine issue existing for trial. Although the deposition of Michael Brown and Ella Brown were part of the record before us on appeal by way of augmentation of the record after appeal, we review only that portion of the record which was before the trial court at the time the summary judgment motion was presented. Neither the deposition of Michael Brown nor any portions thereof were part of the trial court record and were not relied upon by the district judge in granting respondent's motions for summary judgment. It is with this factual background and these legal principles and standards in mind that we review this appeal.

## II.

### *Theories of Tort of Outrage and Intentional Infliction of Emotional Distress*

The appellants seek to recover damages for emotional distress caused by respondents' alleged "outrageous, wanton, and malicious conduct." Appellants argue that the facts in this case clearly fall within the parameters of the tort of outrage and cite Prosser and Keeton, *Law of Torts* in support of their position. In the section entitled "Infliction of Mental Distress" Prosser and Keeton discuss the evolution of a cause of action based on extreme and outrageous conduct, sometimes referred to as the "tort of outrage." Historically, the basis of liability often rested upon technical assault, battery, false imprisonment, trespass to land, nuisance, or invasion of the right to privacy. Prosser and Keeton, *Law of Torts* § 12, pp. 60–61 (5th ed., 1984). However, in the early part of this century some courts began to recognize that the inten-

tional infliction of mental disturbance by extreme and outrageous conduct constituted a cause of action in itself. *Id.* at 60. Generally speaking, liability is based on conduct "exceeding all bounds usually tolerated by decent society, and of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Id.* at 60. Prosser notes that the cause of action may take a variety of forms,[1] including those that involve the mishandling of dead bodies.[2] In the early cases dealing with the mishandling of dead bodies, most courts based the cause of action on interference with a "property right" to the body, usually in the next of kin. *Id.* at 63. However, as time went on courts began to disregard the property right basis for recovery and began to recognize that the tort is in reality the infliction of mental distress. *Id.* at 63.

■■■■ We have not specifically recognized a cause of action or theory of recovery known as the tort of outrage, and decline to do so on the facts and circumstances presented here. However, the tort of intentional infliction of emotional distress is well established in Idaho. *Gill v. Brown,* 107 Idaho 1137, 695 P.2d 1276 (Ct. App.1985); *Rasmuson v. Walker Bank & Trust Co.,* 102 Idaho 95, 625 P.2d 1098 (1981); *Hatfield v. Max Rouse & Sons Northwest,* 100 Idaho 840, 606 P.2d 944 (1980). In order to recover for the inten-

tional infliction of emotional distress the plaintiff must prove that the defendant's conduct was extreme and outrageous which either intentionally or recklessly causes severe emotional distress. *Gill v. Brown,* 107 Idaho 1137, 695 P.2d 1276 (Ct. App.1985); *Rasmuson v. Walker Bank & Trust Co.,* 102 Idaho 95, 625 P.2d 1098 (1981); *Hatfield v. Max Rouse & Sons Northwest,* 100 Idaho 840, 606 P.2d 944 (1980).

A scholarly analysis of the history and theory of intentional infliction of emotional distress as recognized by this Court is contained in *Hatfield v. Max Rouse.*[3] *Hatfield* is of more than passing interest in this action because while discussing the theory in question, the Court cited to several cases involving the mishandling of deceased's remains. Although it is not necessary to cite the extensive discussion of intentional infliction of emotional distress set forth in *Hatfield,* the following quote is noteworthy because it summarizes the standard necessary to award damages for the intentional infliction of emotional distress and cites to cases relevant to the issues presented in this instant action.

> However one defines what persons can expect from society it is plain that courts have required very extreme conduct before awarding damages for the intentional infliction of emotional distress. *See, e.g., Blakeley v. Shortal's Estate,* 236

1. *Wilkinson v. Downtown,* 2 Z.B.D. 57, (1897) (practical joker told a woman that her husband had been smashed up in an accident and was lying at The Elms at Leytonstone with both legs broken, and that she was to go and fetch him.); *Bielitski v. Obadiake,* 61 Dom.L.Rep. 494 (1921) (defendant spread the false rumor that the plaintiff's son had hanged himself); *State Rubbish Collectors Ass'n v. Siliznoff,* 38 Cal.2d 330, 240 P.2d 282 (1952) (threats of an association of rubbish collectors to beat the plaintiff, destroy his truck, and put him out of business, unless he paid over proceeds from a territory which they had allocated to one of their members.)

2. *Alderman v. Ford,* 146 Kan. 698, 72 P.2d 981 (1937) (widow may maintain action for mental pain and suffering resulting directly from unauthorized autopsy of body of her husband notwithstanding that widow suffered no physical injury); *Spomer v. City of Grand Junction,* 144 Colo. 207, 355 P.2d 960 (1960) (action by parents of deceased child whose body was moved

from one location of the cemetery to another location in the cemetery); *Wilson v. Saint Louis & S.F.R. Co.,* 160 Mo.App. 649, 142 S.W. 775 (1912) (body of plaintiff's wife was taken as baggage for transportation by a carrier; baggageman stood on box containing coffin and pulled heavy trunks from the top of the car and let them fall with full force on the box containing the coffin so that the falling boxes would bounce to the floor of the baggage car, the plaintiff at the time pleading with the baggageman not to handle the body in such a rough and inhuman manner).

3. *Hatfield v. Max Rouse* has been the subject of extensive analysis and criticism by this Court. In *Brown v. Fritz,* 108 Idaho 357, 699 P.2d 1371 (1985), we held that *Hatfield,* insofar as the law of punitive damages is concerned, has been superceded by subsequent cases. *See Cheney v. Palos Verdes Inn Corp.,* 104 Idaho 897, 665 P.2d 661 (1983).

Iowa 787, 20 N.W.2d 28 (1945) (defendant's decedent committed suicide in plaintiff's kitchen); *Hill v. Traveler's Ins. Co.*, 154 Tenn. 295, 294 S.W. 1097 (1927) (mutilation of dead body); *Boyle v. Chandler*, 138 A. 273 (Del.Sup.1927) (removal of body from casket); *Price v. Yellow Pine Paper Mill Co.*, 240 S.W. 588 (Tex.Civ.App.1922) (plaintiff's husband brought home in severely injured condition without warning); *Great A. & P. Tea Co. v. Roch*, 160 Md. 189, 153 A. 22 (1931) (wrapping up a dead rat in place of a loaf of bread for a sensitive customer); *Bielitski v. Obadiak*, 61 Dom.L.Rep. 494 (1921) (spreading false rumor that plaintiff's son had hanged himself). Rouse's conduct in this case simply does not rise to the level of outrageousness of these cases.

Accordingly we hold that the tort of intentional infliction of emotional distress does not lie in this case.

*Hatfield*, 100 Idaho at 850, 606 P.2d at 954.

■ A careful and thorough review of the record before us clearly reveals that the plaintiffs have not offered or provided any evidence that can create a reasonable inference of the extreme intentional or reckless conduct required to establish a viable claim for intentional infliction of emotional distress. In order to support a claim for relief under this theory, the pleadings should allege facts as distinguished from statements or conclusions. *Ayers v. General Hosp.*, 67 Idaho 430, 182 P.2d 958 (1947); *see Bullock v. Joint Class "A" School Dist. No. 241, Idaho, Adams & Lewis Counties*, 75 Idaho 304, 272 P.2d 292 (1954) (allegations of complaint were insufficient as mere conclusions in absence of any facts supporting such charges); *see also Cohen v. Groman Mortuary, Inc.*, 231 Cal.App.2d 1, 41 Cal.Rptr. 481 (1964) (complaint which alleged no intentional tort on part of defendant mortuary in substituting body of stranger for that of plaintiffs' sister for funeral service and which contained no facts relating to malice did not state cause of action based on implied malice by merely alleging that acts were wrongful, wanton, and willful). A review of the pleadings in the instant action reveal

that the appellants have merely made conclusory statements that the respondents lost the decedent's remains and allege that act alone constituted outrageous and wanton conduct sufficient for recovery without setting forth any facts to support those conclusions in either the pleadings or by way of affidavits in the summary judgment proceedings.

Simply stated, plaintiffs have alleged nothing more than conclusions in their complaint and there is absolutely nothing in the record to raise an issue that defendants' conduct was outrageous, wanton or malicious. The loss of Charles' remains is obviously tragic, however the state of the record is such that the trial court properly granted summary judgment on this issue. We therefore affirm the trial court's summary judgment on the claims for damages based on alleged outrageous conduct or intentional infliction of mental distress.

### III.

### *Negligence Claim*

■ The appellants' complaint alleges that the respondents negligently mishandled the cremated remains of Charles Brown and as a result of this negligence appellants suffered mental anguish. In order to recover damages for emotional distress, the well-established law in Idaho clearly requires that emotional distress be accompanied by physical injury or physical manifestations of injury. In *Summers v. Western Idaho Potato Processing Co.*, 94 Idaho 1, 479 P.2d 292 (1970), the plaintiff had her clothing ripped off by machinery leaving her standing nude in front of her fellow employees. In an action against her employer she sought damages for pain, suffering, mental anguish and nervous shock. In *Summers* we held that a plaintiff could not recover for pure emotional distress absent an accompanying physical injury. We have continued to adhere to this rule in other cases. *See Czaplicki v. Gooding Joint School Dist. 231*, 116 Idaho 326, 775 P.2d 640 (1989) (physical symptoms such as severe headaches, occasional suicidal thoughts, sleep disorders, reduced

libido, fatigue, stomach pains and loss of appetite were sufficient to withstand summary judgment); *Hathaway v. Krumery,* 110 Idaho 515, 716 P.2d 1287 (1986); *Brown v. Fritz,* 108 Idaho 357, 699 P.2d 1371 (1985); *Hatfield v. Max Rouse & Sons Northwest,* 100 Idaho 840, 606 P.2d 944 (1980); *Herrera v. Conner,* 111 Idaho 1012, 729 P.2d 1075 (Ct.App.1986); *Gill v. Brown,* 107 Idaho 1137, 695 P.2d 1276 (Ct. App.1985). In their legal treatise, Prosser and Keeton on *The Law of Torts,* confirm this general rule of law requiring a physical injury to accompany the emotional distress.

> Where the defendant's negligence causes only mental disturbance, without accompanying physical injury, illness or other physical consequences, and in the absence of some other independent basis for tort liability, the great majority of courts still hold that in the ordinary case there can be no recovery.

*Id.* § 54, p. 361 (1984).

However, Prosser and Keeton point out that two exceptions to this general rule have been recognized.

> In two special groups of cases, however, there has been some movement to break away from the settled rule and allow recovery for mental disturbance alone.... [A] group of cases has involved the negligent mishandling of corpses. Here the traditional rule has denied recovery for mere negligence, without circumstances of aggravation. There are by now, however, a series of cases allowing recovery for negligent embalming, negligent shipment, running over the body, and the like, without such circumstances of aggravation. What all of these cases appear to have in common is an especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious. Where the guarantee can be found, and the mental distress is undoubtedly real and serious, there may be no good reason to deny recovery.

*Id.* p. 362 (1984) (footnotes and citations omitted). *See also Garrard v. St. Eliza-* *beth Hosp.,* 708 S.W.2d 571 (Tex.App.1986); *Clark v. Smith,* 494 S.W.2d 192 (Tex.Civ. App.1973); *See Allen v. Jones,* 104 Cal. App.3d 207, 163 Cal.Rptr. 445 (1980) (oral agreement with mortuary under which mortuary agreed to cremate body of plaintiff's brother, damages are recoverable for mental distress for the negligent mishandling of corpse); *Pat H. Foley & Co. v. Wyatt,* 442 S.W.2d 904 (Tex.Civ.App.1969) (recovery for mental anguish permissible based on the neglIgence of the funeral home); *Strachan v. John F. Kennedy Memorial Hosp.,* 109 N.J. 523, 538 A.2d 346 (1988) (plaintiffs did not have to prove physical injury to recover for emotional distress for defendant's breach of duty to turn over son's body because the negligent mishandling of a corpse exception applied); *Baumann v. White,* 234 N.Y.S.2d 272 (1962) (recovery for mental anguish was permissible based on undertaker's negligent conduct); *Missouri, Kansas & Texas Ry. v. Hawkins,* 50 Tex.Civ.App. 128, 109 S.W. 221 (Tex.Civ.App.1908); *Torres v. State,* 34 Misc.2d 488, 228 N.Y.S.2d 1005 (1962); *Weingast v. State,* 44 Misc.2d 824, 254 N.Y.S.2d 952 (1964); *Blanchard v. Brawley,* 75 So.2d 891 (La.1954); *Whitehair v. Highland Memory Gardens, Inc.,* 327 S.E.2d 438 (W.Va.1985); *McPosey v. Sisters of the Sorrowful Mother,* 177 Okl. 52, 57 P.2d 617 (1936); *Golston v. Lincoln Cemetery, Inc.,* 573 S.W.2d 700 (Mo.App. 1978); Annot. *Liability for Withholding Corpse,* 48 A.L.R.3d 240, p. 247 (1973). *But see Chisum v. Behrens,* 283 N.W.2d 235 (S.D.1979); *Dunaboo v. Bess,* 146 Fla. 182, 200 So. 541 (1941); *Daniels v. Adkins Protective Service, Inc.,* 247 So.2d 710 (Miss.1971); *Corrigal v. Ball & Dodd Funeral Home, Inc.,* 89 Wash.2d 959, 577 P.2d 580 (1978) (held that mere loss of sleep and deterioration of general well being was sufficient physical manifestation to warrant recovery for mental anguish).

■ Furthermore, the *Restatement (Second) of Torts* also makes this specific exception to tort law. Section 868 reads as follows:

> **Interference with Dead Bodies.** One who intentionally, recklessly or *negligently* removes, withholds, mutilates or

operates upon the body of a dead person or prevents its proper interment or cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body. (Emphasis added).[4]

Comments *d* and *f* further explain the *Restatement.*

*d.* The rule stated in this Section applies not only to an intentional interference with the body itself or with its proper burial or cremation, but also to an interference that is reckless or merely negligent. Thus an undertaker who negligently embalms the body, a carrier that negligently transports it or an automobile driver who negligently collides with the hearse and dumps the corpse out into the highway will be subject to liability, if the result is harm to the body or prevention of its proper burial or cremation.

*e.* . . . .

*f.* The damages recoverable include not only the mental distress suffered by the one entitled to disposition of the body but also physical harm resulting from the mental distress.

Thus, in accordance with the above cited authorities which we adopt and follow, we hold that an exception to the general rule involving damages for mental distress now exists in Idaho for cases involving mishandling of decedents' bodies and remains. A plaintiff entitled to recover need not manifest any accompanying physical injuries in order to recover for emotional distress in this particular type of case.

However, the case law clearly holds that the only person entitled to the exception outlined above is the person entitled to the proper disposition of the body. The "primary and paramount rights to possession of the body of a decedent, and to control burial or other legal disposition of the body, are in the surviving spouse." 22A Am.Jur.2d *Dead Bodies* § 86, p. 56 (1988); *Vogelaar v. United States,* 665 F.Supp. 1295 (E.D.Mich.1987); *Whitehair v. Highland Memory Gardens, Inc.,* 327 S.E.2d 438 (W.Va.1985); *Dumouchelle v. Duke University,* 69 N.C.App. 471, 317 S.E.2d 100 (1984); *Simpkins v. Lumbermens Mut. Casualty Co.,* 200 S.C. 228, 20 S.E.2d 733 (1942); *Steagall v. Doctors Hospital,* 171 F.2d 352 (D.C.1948); *Southern Life & Health Ins. Co. v. Morgan,* 21 Ala.App. 5, 105 So. 161 (1925); *Edwards v. Franke,* 364 P.2d 60 (Alaska 1961); *Pettigrew v. Pettigrew,* 207 Pa. 313, 56 A. 878 (1904). *But see Restatement (Second) of Torts* § 868, comment g. Therefore, absent physical injury manifesting emotional distress, we hold that only the spouse, or next surviving kin, may bring a cause of action pursuant to this exception.

■ We note that Ella Brown testified in her deposition that subsequent to her discovery that she possessed the cremated remains of a stranger rather than those of her deceased husband, she began to suffer a variety of physical symptoms including loss of sleep, headaches, and stomach pains. These physical manifestations are sufficient to prove an accompanying physical injury sufficient to assert a claim for negligent infliction of emotional distress. *Czaplicki v. Gooding Joint School Dist. 231,* 116 Idaho 326, 775 P.2d 640 (1989). Furthermore, under the exception to the law of negligent infliction of emotional distress we now recognize, Ella Brown has alleged in her complaint and asserted facts in those portions of her deposition sufficient to withstand respondents' motion for summary judgment. Under the exception to the general rule, which we now recognize, Ella Brown, as the surviving spouse, need not prove or show physical injury in order to recover for emotional distress arising out of the mishandling of her deceased husband's cremated remains.

■ However we do not hold that a defendant in this type of case is strictly liable for a claim of mishandling of a body. Plaintiffs must still prove all of the elements of negligence and damages in order to recover. The mere fact that mishandling of a body has occurred does not

---

**4.** This section was also included in the *Restatement of Torts (1st).* However, the word negligently was not included in that prior version.

automatically entitle plaintiffs to recover damages for emotional distress. In the instant case we have reviewed the record, construed all of the inferences in favor of Ella Brown and find that genuine issues of material fact remain which preclude summary judgment from being entered at this time on the issue of negligent infliction of emotional distress.

Michael Brown is not the surviving spouse, or next surviving kin, and as such he does not come within the exception we recognize, and in order to recover damages for negligently inflicted emotional distress must show physical manifestations of injury.

There is nothing in the record that was before the trial court to show that Micheal Brown had suffered or was suffering from any emotional distress, i.e. physical manifestation, that would entitle him to recover under the theory of negligent infliction of emotional distress. Therefore, we affirm the decision of the trial court that no genuine issues of material fact exist with respect to Michael Brown's claim and that summary judgment was properly granted for both defendants on his claim. The exception we recognize in favor of the surviving spouse, or next surviving kin, does not apply to Michael Brown.

Our review of the record reveals genuine issues of material fact that exist concerning Ella Brown's claim for negligent infliction of emotional distress and we reverse on her claim. Since no genuine issue of material fact is present in the record concerning Micheal Brown's claim for negligent infliction of emotional distress, we affirm the trial court on his claim.

## IV.

### Breach of Contract Claim

Aultorest asserted that no contract existed between it and Mrs. Brown concerning the cremation of Charles Brown. However, we note that the state of the record at this point in time for purposes of summary judgment indicates that Aultorest accepted the body of Charles Brown for cremation and was paid for its services.[5] The care and preparation of human bodies for burial is a service personal to the spouse and family of the deceased. See Chelini v. Nieri, 188 P.2d 564 (Cal. 1948), modified on appeal, 32 Cal.2d 480, 196 P.2d 915 (1948); Lamm v. Shingleton, 231 N.C. 10, 55 S.E.2d 810 (1949). Hence, the acceptance of Charles Brown's body for cremation and receipt of payment for those services is prima facie evidence that a contract exists between Mrs. Brown and Aultorest. Failure to properly perform the cremation or to return the remains of Charles Brown following cremation is a breach of that personal service contract. In the present case it is clear from the pleadings and the proceedings below that Ella Brown, as a party to the contract for the cremation of her deceased husband, has a valid claim for breach of contract against Aultorest and, at a minimum, she should be allowed to pursue a claim for recovery of her pecuniary losses if she is able to prove the allegations contained in her pleadings. Consequently, we find Aultorest's argument that no contractual relationship existed between it and Mrs. Brown is without merit.

The appellants' complaint seeks damages for mental anguish based on the alleged breach of contract between them and respondents. The Court in Hatfield v. Max Rouse & Sons Northwest, 100 Idaho 840, 606 P.2d 944 (1980), held that damages for breach of contract may include those sustained because of mental distress or emotional trauma. However, in Brown v. Fritz, 108 Idaho 357, 699 P.2d 1371 (1985), it was noted that Hatfield was superceded by Cheney v. Palos Verdes Inv. Corp., 104 Idaho 897, 665 P.2d 661 (1983), so far as it related to damages for emotional distress in contract actions. In Brown, a purchaser of real property brought an action against

5. Respondent Aultorest acknowledges in its brief before this Court that "Matthews contacted Aultorest, located in Ogden, Utah ... to accomplish the cremation. On or about June 5, 1984, Aultorest received the decedent's body and it was cremated on the same date. The cremated remains were then shipped back to Matthews."

the landowner for breach of contract and negligent infliction of emotional distress. That case involved the sale of residential property whereby the defendant fraudulently misrepresented certain features of the property, causing pecuniary damage to the plaintiff. The defendant had also previously sold a portion of the lot to another party. When the plaintiff learned of the true condition of the property and of the claim to the property by the other purchaser, she suffered severe emotional distress which manifested itself in physical symptoms, including the need for hospitalization. In *Brown* this Court noted:

> We hold that there is no significant, if in fact any difference between conduct by a defendant which may be seen to justify an award of punitive damages, and conduct which may justify an award of damages for emotional distress. Justification for an award of damages for emotional distress seems to lie not in whether emotional distress was actually suffered by a plaintiff, but rather in the quantum of outrageousness of the defendant's conduct. Although a plaintiff may in fact have suffered extreme emotional distress, accompanied by physical manifestation thereof, no damages are awarded in the absence of extreme and outrageous conduct by a defendant.... Based upon all of the above, we hold that in Idaho, *when damages are sought for breach of a contractual relationship, there can be no recovery for emotional distress suffered by a plaintiff. If the conduct of a defendant has been sufficiently outrageous, we view the proper remedy to be in the realm of punitive damages.* (Emphasis added.)

*Id.* 108 Idaho at 362–63, 699 P.2d at 1376–77.

While respondents' alleged breach of contract arising out of failure to return the cremated remains may have caused emotional distress, appellants' remedy in contract is for punitive damages, not emotional distress. *Brown v. Fritz*, 108 Idaho 357, 699 P.2d 1371 (1985). The complaint filed by plaintiffs alleged that the body of Charles Blaine Brown had been delivered to respondents for cremation services and

in the process his remains had been lost. Although plaintiffs seek damages for alleged outrageous conduct, the record before us and the trial court is devoid of any evidence by way of affidavit or deposition to oppose the motions for summary judgment. The case law and the Rules of Civil Procedure clearly require more than reliance on the allegations contained in the pleadings to withstand granting of summary judgment on this issue. Rule 56(e) expressly states:

> [W]hen a motion for summary judgment is made and supported as provided in this rule, an *adverse party may not rest upon the mere allegations or denials of his pleadings*, but response, *by affidavits* or as otherwise provided in this rule, *must set forth specific facts* showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him. (Emphasis added.)

*See Verbillis v. Dependable Appliance Co.*, 107 Idaho 335, 689 P.2d 227 (Ct.App. 1982); *Barlow's, Inc. v. Bannock Cleaning Corp.*, 103 Idaho 310, 647 P.2d 766 (Ct.App.1982).

Although outrageous conduct is an element of punitive damages and is generally a jury question, *Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 665 P.2d 661 (1983), our case law and rules clearly require the party opposing the motion for summary judgment to set forth specific facts showing that there is a genuine issue for trial and may not rest upon the mere allegations of the pleadings to oppose the motion. The last sentence of I.R.C.P. 56(e) contains an ominous warning couched in mandatory language. Unless the party opposing the motion files affidavits or responds as required by the rule and chooses to rely on the mere allegations of his pleadings, "... summary judgment, if appropriate, shall be entered against him." I.R.C.P. 56(e).

In the instant appeal plaintiffs failed to file anything in opposition to defendants' motions for summary judgment on the issue of alleged outrageous conduct. Ac-

cordingly, in the absence of affidavits or evidence in the record to oppose the motion on this issue, the trial court appropriately granted defendants' motions for summary judgment as to punitive damages arising out of any contractual relationship between the Browns and respondents, Matthews Mortuary and Aultorest.

## V.

### Conclusion

We have carefully reviewed the record and in construing all of the favorable inferences in favor of the plaintiffs-appellants we find that there is no material issue of fact concerning whether Matthews Mortuary or Aultorest's conduct was outrageous, intentional or reckless. Furthermore, Idaho does not recognize the separate tort of "outrage." Thus, summary judgment on the issue of intentional infliction of emotional distress was properly granted.

After reviewing the record we conclude that a contract existed between Aultorest and Mrs. Brown for services relating to the cremation of Charles Brown and that material issues of fact remain as to whether a breach of contract occurred. In Idaho an award for emotional distress is not allowed in a contract action. Plaintiffs proper remedy is for punitive damages if the breach is outrageous, reckless or grossly negligent. Although Browns have alleged that the breach of contract was outrageous, wanton and malicious, we find that the record for summary judgment purposes is so devoid of specific facts that no inference exists in favor of the Browns sufficient to preclude summary judgment even if we construe the pleadings to contain a claim for punitive damages. Thus, we affirm the district court's dismissal of the claim for emotional distress arising out of breach of contract, however, Ella Brown may pursue a claim for pecuniary or consequential damages arising out of breach of contract. The record contains sufficient evidence to allow this issue to be heard by the trier of fact and summary judgment should not have been granted on the action for pecuniary damages arising out of breach of contract.

Although the general rule in Idaho requires that physical injury accompany emotional distress to recover for a claim of negligent infliction of emotional distress, we recognize and hold that in this specific type of case, *i.e.*, negligent mishandling of a dead human body, the expectation that the surviving spouse or next surviving kin will experience emotional trauma is high and the threat of a frivolous and spurious law suit is low. In *Brown v. Fritz*, 108 Idaho 357, 699 P.2d 1371 (1985), we left the door open for this exception wherein we stated:

> We emphasize that our ruling today speaks only to damages asserted for emotional distress which arise from or have their roots in the breach of a contractual relationship. We do not speak to the question of purely tortious conduct arising outside of and apart from a contractual relationship. *We leave to another day the carving out of conduct which, while arising in contract, might be conclusively presumed to inflict emotional distress, e.g. mutilation of a dead body, [citation omitted], or removal of a body from its casket [citation omitted].* (Emphasis added.)

*Id.* 108 Idaho at 363, 699 P.2d at 1374.

Genuine issues of fact remain as to the alleged negligent acts on the part of Matthews Mortuary or Aultorest and it was improper to grant summary judgment against Ella Brown on the negligent infliction of emotional distress issue. Furthermore, Ella Brown indicated in her deposition that she is presently suffering from varying physical ailments that are a result of the emotional distress caused. These physical manifestations of the emotional distress are sufficient for summary judgment purposes to create an inference that physical injuries accompanied the emotional distress. Therefore, it was improper to grant summary judgment on Ella Brown's claim for negligent infliction of emotional distress. The district court's decision on this issue is reversed. The district court's decision granting summary judgment in favor of defendants on Michael Brown's claim is affirmed.

## VI.

### *Costs and Attorney Fees*

The trial court awarded attorney fees to the respondents as the prevailing parties on the basis that the appellants' claims were pursued frivolously and unreasonably. The appellants challenge the award of attorney fees to the respondents not on the basis that the claim was not pursued frivolously, but on the ground that the respondents themselves did not incur attorney fees because their insurance companies paid the fees. The appellants' argument in this regard is clearly without merit. In *Futrell v. Martin,* 100 Idaho 473, 600 P.2d 777 (1979), this Court held the fact that the defendants were represented by insurance companies and thus did not personally incur attorney fees did not preclude an award of attorney fees to the defendants pursuant to I.C. § 12–121. However, we reverse the trial court's award of attorney fees in the instant appeal on the basis that Ella Brown's claim was not pursued frivolously or unreasonably and an award of attorney fees to the respondents as prevailing parties was improper. I.R.C.P. 54(e)(1); I.C. § 12–121. The trial court's award of costs to respondents is reversed.

Affirmed in part, reversed in part. No fees on appeal. Costs to appellants.

JOHNSON and McDEVITT, JJ., and WOOD, District Judge, concur.

BAKES, Chief Justice, concurring in part and dissenting in part:

I concur in the result reached by the majority opinion except that portion of Part IV of the majority opinion which concludes that a breach of contract claim existed between Ella Brown and Aultorest.

First, with regard to Part III of the opinion, the majority opinion correctly states that Ella Brown's "physical manifestations are sufficient to prove an accompanying physical injury to assert a claim for negligent infliction of emotional distress." I believe this statement is entirely accurate and adequate to resolve the issue with respect to Ella. However, I would not go as far as the majority does and create an exception to the physical injury requirement in cases involving mishandling of a decedent's remains. There is simply no need to do so in this case. Under *Czaplicki v. Gooding Joint School Dist.,* 116 Idaho 326, 775 P.2d 640 (1989), this Court's most recent pronouncement in the area of negligent infliction of emotional distress, we made clear that allegations of physical injury, such as those furnished by Ella in her deposition, are sufficient to preclude a motion for summary judgment. The holding of the trial court with respect to Ella should be reversed based on *Czaplicki,* not by creating a new rule of law. Where the existing law is sufficient to cover the situation, no good purpose is served by expanding the law; rather, the law only becomes more complex and unsettled.

In Part IV of its opinion, the majority holds that Ella may sue both Matthews Mortuary and Aultorest for breach of contract. I agree that Mrs. Brown has a breach of contract claim against Matthews Mortuary. However, Mrs. Brown had no contact whatsoever with Aultorest.

The majority reasons that Aultorest accepted the body of Charles Brown for cremation and was paid for its services and concludes that the receipt of the body and payment are *"prima facie* evidence that a contract existed between Mrs. Brown and Aultorest." *Ante* at 45. The record reveals that Aultorest received the body from and was paid by Matthews Mortuary, not Mrs. Brown. Aultorest's contract dealings were with Matthews Mortuary, not Mrs. Brown. A more direct connection between the parties is essential to the existence of a contractual relationship. The cases cited by the Court on page 13 of its opinion are easily distinguished. In each of those cases the spouse or family had a direct personal relationship with the mortuary, similar to that which Mrs. Brown had with the Matthews Mortuary here. In fact, the holding in *Lamm v. Shingelton,* 231 N.C. 10, 55 S.E.2d 810 (1949), explicitly requires a direct contractual relationship between the plaintiff and the undertaker. As stated in *Lamm, "A party to a contract* who is injured by another's breach of the contract

is entitled to recover from the latter...." 55 S.E.2d at 812 (emphasis added). However, there was no such contract relationship with Aultorest by Mrs. Brown. They had no contacts and no dealings. Aultorest performed a contract service for Matthews Mortuary, not Mrs. Brown, and in the absence of a claim of third party beneficiary, of which there is none in this case, there is no basis for a contract claim by Mrs. Brown against Aultorest.